**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____ x
IN RE AIRBAK TECHNOLOGIES       :
LITIGATION                      :          MASTER FILE
                                :          14-cv-1924-LTS-RLE
This Document Relates To: All Actions  :
                                :          **CONSOLIDATED**
                                :          **AMENDED COMPLAINT**
                                :

FREDERICK TERRY GLYNN, GERY SAMPERE (Individually, and on Behalf Of AIR BAK TECHNOLOGIES, LLC) and JULIEN NIEVES (hereinafter collectively "the LLC Plaintiffs"), by and through their undersigned attorneys, VERNER SIMON; and JAMES DOLAN, FRANCES GOLDFARB, BEN CELAJ, and LUIGI MARTONE (hereinafter "the Corporation Plaintiffs"), by and through their attorneys, SHAFER GLAZER, as and for their Complaint against the Defendants in this action, allege as follows:

## INTRODUCTION

1.      This is an action by two groups of investors to recover damages for patent infringement, copyright infringement, trademark infringement, breach of fiduciary duty, misappropriation of a corporate opportunity, breach of the implied covenant of good faith and fair dealing, breach of contract, tortious interference with business, conversion, racketeering, constructive trust equitable accounting, declaratory relief, rescission, and temporary, preliminary, and permanent injunctive relief.

The investors of and contributors to AIRBAK TECHNOLOGIES, LLC, known as the LLC Plaintiffs, bring this action to recover damages for patent infringement, copyright infringement and trademark infringement, breach of fiduciary duty, misappropriation of a corporate

opportunity, breach of the implied covenant of good faith and fair dealing, breach of contract, tortious interference with business, conversion, equitable accounting, declaratory relief, rescission, and temporary, preliminary, and permanent injunctive relief. The action arises from the Defendant, PHILLIP TROY CHRISTY's, theft, pirating, arising out of the membership of Plaintiffs, FREDERICK TERRY GLYNN and GERY SAMPERE, and defendant PHILLIP TROY CHRISTY in AIR BAK TECHNOLOGIES, LLC ("AIR BAK" or the "LLC"), and the surreptitious taking of the intellectual property and company assets and sale of them to a third-party without adequate disclosure of the nature of the transaction and without authority to engage in such a transaction. Also, the Plaintiffs are suing AIR BAK derivatively as members of the LLC.

2.      The investors of and contributors to AIRBAK TECHNOLOGIES CORP. and AIRBAC HOLDINGS, LLC, known as the Corporation Plaintiffs, bring this action to recover damages for racketeering, patent infringement, copyright infringement, trademark infringement, breach of fiduciary duty, constructive trust, declaratory relief, temporary, preliminary, and permanent injunctive relief. The action arises from the Defendants', TROY PHILLIP CHRISTY and JOE SPEYER's, theft, usurpation, and unfair competition, arising out of the plaintiffs' and defendants' ownership and/or association with Air Bak Technologies, Corp. and Airbac Holdings, LLC and the surreptitious taking of the intellectual property and company assets and unauthorized *ultra vires* activity without adequate disclosure of the nature of the transactions and without authority to engage in such a transactions.

**PARTIES**

3.      Plaintiff FREDERICK TERRY GLYNN (hereinafter "GLYNN" or collectively "LLC

Plaintiffs") is and was at all times relevant to this Complaint an individual domiciled the state of California residing at 4008 Marcus Ave, Newport Beach, CA 92663.    GLYNN at all relevant times was and is a Member and the Member Manager of the LLC.    GLYNN is suing individually and derivatively as a Member and the Member Manager of the LLC.  At all relevant times GLYNN was held out by the LLC as the day to day Manager or CEO.

4.    Plaintiff GERY SAMPERE (hereinafter "SAMPERE" or collectively "LLC Plaintiffs") is and  was at all times relevant to this Complaint an individual domiciled the state of New York  residing at 55 Hammond Ridge Road, Armonk, NY 10504.  SAMPERE   at  all relevant times  was and is a Member of the LLC.    SAMPERE is suing individually and derivatively as a Member of the LLC.  At all relevant times, SAMPERE was the financial arm of the LLC having  invested over $800,000 in the LLC.

5.    Plaintiff JULIAN NIEVES (hereinafter "NIEVES" or collectively "LLC Plaintiffs") is and  was at all times relevant to this Complaint an individual domiciled the state of New York  residing at 51 Cox Ave., Armonk, NY 10504.

6.    Plaintiff, JAMES DOLAN, (hereinafter "DOLAN" or collectively "Corporation Plaintiffs") is and was at all times relevant to this complaint an individual domiciled in the state of New York, with an address of 18 Ford Products Road, Valley Cottage, New York 10989. At all times during their existence, he has been a member and manager of Air Bak Technologies, Corp. and Airbac Holdings, LLC. DOLAN is suing individually and derivatively as a member and manager of Air Bak Technologies, Corp and Airbac Holdings, LLC.

7.    Plaintiff, FRANCES GOLDFARB (hereinafter "GOLDFARB" or collectively "Corporation Plaintiffs"), is and was at all times relevant to this complaint an individual domiciled in the state of New Jersey, with an address of 280 Glen Avenue, West, Harrington Park, New Jersey,

07640. At all times during their existence, she has been a member of Airbac Holdings, LLC and has held two promissory notes, totaling $250,000, for funds loaned to Air Bak Technologies, Corp.

8.      Plaintiff, BEN CELAJ (hereinafter "CELAJ" or collectively "Corporation Plaintiffs") is and was at all times relevant to this complaint an individual domiciled in the state of New York, with a business address of 931 Morris Park Avenue, Second Floor, Bronx, NY 10462. At all times during their existence, he has been a member and manager of Air Bak Technologies, Corp and Airbac Holdings, LLC. CELAJ is suing individually and derivatively as a member and manager of Air Bak Technologies, Corp and Airbac Holdings, LLC.

9.      Plaintiff, LUIGI MARTONE (hereinafter "Martone" or collectively "Corporation Plaintiffs) is and was at all times relevant to this complaint an individual domiciled in the state of New York, with a business address of 931 Morris Park Avenue, Second Floor, Bronx, NY 10462. At all times during their existence, he has been a member and manager of Air Bak Technologies, Corp. and Airbac Holdings, LLC. Dolan is suing individually and derivatively as a member and manager of Air Bak Technologies, Corp and Airbac Holdings, LLC.

10.     Defendant PHILLIP TROY CHRISTY (hereinafter "CHRISTY" or collectively "Defendants")  is and was  at all times relevant to this Complaint a citizen of the state of New York residing  at 52 Martin Road, Hopewell Junction, NY 12533.   As set forth in the facts described below, CHRISTY was at certain relevant times a Member of the LLC.

11.     AIR BAK TECHNOLOGIES,  LLC (hereinafter "the LLC") is a Delaware limited liability company which was duly formed in or about December 2009 by Plaintiffs, GLYNN, SAMPERE and the Defendant CHRISTY, under the laws of Delaware, which was also a duly registered foreign LLC authorized to conduct business in the State of New York and which, was situated and conducting business in the State of New York, County of New York during the

events described below in this Complaint.  The LLC is sued herein as a Defendant.

12.    Defendant AIR BAK TECHNOLOGIES CORP. (hereinafter  "the CORPORATION") is or was a Delaware corporation formed by Defendant CHRISTY Upon information and belief, CHRISTY'S AIR BAK COMPANY, under the control of Defendant CHRISTY, operates office in the Bronx, New York as well as in other parts of New York and in China in furtherance CHRISTY's illegal and illegitimate goals.

13.    Defendant Airbac Holding Company, LLC (hereinafter "the Holding Company") is a Delaware Limited Liability Company which operates from 52 Martin Road, Hopewell Junction, New York, NY.

## JURISDICTION and VENUE

14.    The claims set forth in this complaint by the LLC Plaintiffs are  for  federal claims of infringement  of  patent,  false  designation of origin in  violation  of  the  Lanham  Act, 15 U.S.C. § 1051  et seq., trademark infringement,  copyright infringement and unfair competition in relation to each.  The action also asserts  supplemental claims for breach of fiduciary duty, breach  of  patent  license  contract,  theft  of  company  assets  and  self-dealing  and  unjust enrichment pursuant to the statutory and common law of New York.

15.    This Court has subject matter jurisdiction over the claims of the LLC Plaintiffs pursuant to the patent,  trademark and copyright laws of the United States pursuant to multiple federal statutes including  but not limited to 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 15 U.S.C. § 1121.  The Patent claims are brought pursuant to  35 U.S.C. § 1, *et seq*., 35 USCS § 256 and 35 USCS § 271.   The trademark claims are brought  pursuant to 15 U.S.C.S. §§ 1051 *et seq*.

The copyright claims are  brought  pursuant to 17 U.S.C. § 101 *et seq.* and 17 U.S.C.S. §§ 1301 *et seq.*  This Court has  supplemental jurisdiction over the state-law claims under 28

U.S.C. § 1367(a).

16.     The claims set forth in this complaint by the Corporation Plaintiffs are for, *inter alia,* activities of racketeering by the Defendants as well as claims of fraud, breach of fiduciary duty, patent infringement, common law trademark infringement, and common law copyright infringement

17.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367 and 18 U.S.C. § 1964(c) in that the allegations of this action are for federally actionable misconduct of the plaintiffs under the Racketeer Influenced and Corrupt Organizations Act ("RICO"); 18 U.S.C. § 1962(c) as well as for supplemental claims of fraud, breach of fiduciary duty, patent infringement, common law trademark infringement, and common law copyright infringement.

18.     Venue in this District is proper pursuant to 28 U.S.C. §§ 1391 (b) and (c) and 1400(b).

19.     This Court has personal jurisdiction over Defendants under New York Civil Practice Law and Rules 301 and 302(a) because, upon information and belief: (i) Defendants are domiciled and/or are registered to do business in New York and do continuous and systematic business in New York and in this District; (ii) Defendants have transacted business in New York and contracted to supply goods or services in New York in connection with matters giving rise to this suit; and/or (iii) Defendants regularly do or solicit business in New York, and/or derive substantial revenue from goods used or services rendered in New York, and/or expect or reasonably should expect their infringing conduct to have consequences in New York and derive substantial revenue from interstate commerce.

## STATEMENT OF FACTS

**AIR BAK TECHNOLOGIES, LLC, Formed in December
2009, Was Structured to Exploit Patents By Licensing and
Selling Proprietary Backpack Products Worldwide. Defendant
CHRISTY Irrevocably Licensed all Interest in The Operative
Patents to the LLC As His Investment in the LLC.**

20.    Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of

the Complaint as though each were fully set forth here at length.

21.    Starting on or about December 16, 2009 and continuing until present date, Plaintiffs

GLYNN and SAMPERE, and Defendant CHRISTY, were Members, and the only Members, of

the LLC and holders of one hundred percent of the membership interests in the LLC.

22.    Defendant CHRISTY invested his patent for an inflatable bladder system to be used in

LLC's backpacks to be produced and sold, the primary product of the LLC and CHRISTY

assigned the patent exclusively and irrevocably.   GLYNN invested his labor and organizational

skills as well as prior assignments in the CHRISTY patent which he had obtained before the

formation of the LLC.  SAMPERE invested money (ultimately to the sum of $800,000.)

23.    On December 16, 2009, the Members entered into an agreement entitled "Limited

Liability Company Agreement" (hereinafter the "Operating Agreement").  (The Operating

Agreement is attached to this Complaint as **Exhibit 1** and hereby incorporated by reference.)

The Operating Agreement provided, among other provisions:

> A.    **Purpose** The purpose of this Company is to exploit the patent(s)
> and patent applications listed in Exhibit A attached hereto and by this
> referenced incorporated into this Agreement (the Patents) by licensing
> and/or selling the proprietary backpack air bladder system ("Comfort-
> pack") and selling backpacks with and without Comfort-pack system
> worldwide.  [3]

> B.    **Capital Contributions**...F. Terry Glenn will contribute all contracts
> as well as current and future revenue pertaining to the patented bladder

system...

Agreement attached in Exhibit B and will include an assignment of all of his right, title and interest in and to the Patents and the intellectual property related to the Patents. [ 6a] Terry GLYNN will contribute all contracts as well as, current and future revenue pertaining to the patented bladder system... The value of this contribution is estimated at $215,000. [6b.]

C.    **Distribution of Profits/Losses and Equity Ownership** ... The Net Profits or Losses of the Company and Equity Ownership, for both accounting and tax purposes, will be distributed between the Members in the following manner: Phillip Troy CHRISTY- 33.33%; F. Terry GLYNN- 33.33%; Gery SAMPERE- 33.33%. [7]

D.    **Management** ...The initial Managers of the Company, until their successors or any additional Managers have been appointed, shall be Phillip Troy CHRISTY, F. Terry GLYNN and Gery SAMPERE. [ 11.1a.] The Company shall be managed by the Managers and the conduct of the Company's business shall be controlled and conducted by the Managers in accordance with this Agreement. [11.1d]

E.    **Management** ... The following decisions of the Managers will require a 67% super majority consent: 1) To remove any of CHRISTY, GLYNN, or SAMPERE as Manager. [11.lg.]

F.    **Management**…. The following decisions require consent of GLYNN and CHRISTY: 1.) To sell, assign or otherwise transfer the Company with the ownership of the Patent included for a price of less than 15,000,000 dollars.
[11.1(h)(i)(1)]

24.    The business of the LLC was to otherwise sell, exploit, market, and optimize the use of the Patents in conjunction with licensing and/or selling the proprietary backpack air bladder system.

25.    In conjunction with executing the Operating Agreement, each Member also entered into an Agreement entitled, Patent License Agreement (the "Patent License Agreement") which was expressly incorporate into the Operating Agreement and made part as "Exhibit B" to the Operating Agreement. (The Patent License Agreement is attached to this Complaint as **Exhibit 2**

and hereby incorporated by reference.)  The Patent License Agreement provided, among other provisions:

> A. **Recitals**... Whereas, Licensor is the inventor of an inflatable bladder for cushioning  backpacks and has applied for a U.S. patent (U.S. Patent Application Serial No. 111101,044).  Licensor has also filed for Patents in China, India, Mexico, and Canada and has filed a worldwide PCT.  Whereas, subject to the terms and conditions of this  Agreement and Licensee's  Operating Agreement, Licensor is willing to grant the  license provided herein.  *[Licensor is Phillip Troy CHRISTY.]*

> B. **Grant of License**.  Licensor [DEFENDANT CHRISTY] hereby grants to Licensee an exclusive, royalty-free license to use the Patents in the Territory in connection with  the use, manufacture, importing, exporting, marketing, merchandising, promotion,  distribution  and sale of Licensed Products, together with the right to grant Sub- Licenses of the Patent.... *Licensor  agrees that he shall not use, and shall not grant a license to any third party to use, the Patent on products of any kind during the Term hereof.* [1]

> C. **Term.** This Agreement shall become effective as of the date of execution hereof and shall continue in full force and effect; provided, however, that in the event that Licensor shall have assigned the Patent to Licensee as contemplated in Section 6 hereof, this Agreement shall automatically terminate except for the purposes referred to  in Section 8 hereof.  [3]

> D. **Assignment of Patent.**  Licensor agrees that in the event of a sale of Licensee that Licensor will be obligated to and shall assign the patent irrevocably and unconditionally  to Licensee, free and clear of all liens and encumbrances, and that this Agreement shall  terminate.  The Operating Agreement states that in the event the company sells for less  than Fifteen Million ($15,000,000), then unanimous consent by members of AIR BAK  TECHNOLOGIES, LLC is needed for the sale to go through.... [6]

26.    Under controlling statutory and common law, each of the Members and Managers had a fiduciary duty to the other Members and Managers and to the LLC.

27.    Also, under the Operating Agreement, each of the Members and Managers had a fiduciary duty to each other and the LLC to act in good faith and not to commit acts of fraud, bad faith or willful tortious misconduct as to the Property, Patents, or otherwise.

28.    Furthermore, under the Operating Agreement and the License Agreement, any purported sale of the LLC that included the Patents required the consent of Plaintiff GLYNN.

**Plaintiff GLYNN Individually Owned 50% Interest in the Patents Prior To the Formation of AIR BAK TECHNOLOGIES, LLC. Defendant CHRISTY Admitted GLYNN's Ownership Interest as Stated in Section 6 of the Operating Agreement.**

29.    Prior to forming the LLC and prior to executing the Operating Agreement and Patent License Agreement, GLYNN and CHRISTY had prior dealings whereby GLYNN purchased 50% interest in the Patents.

30.    In 2006, GLYNN entered into a transaction with CHRISTY whereby GLYNN paid CHRISTY $100,000 personally and contributed $50,000 into a company called Ergodynamics, LLC. The purpose of this company originally was to market and otherwise exploit the backpack technology.

31.    Subsequently, CHRISTY verbally acknowledged that GLYNN owned 50% of the patents in exchange for an additional personal contribution from GLYNN to CHRISTY in the amount of $25,000.

32.    As previously stated and evidenced by the terms of the Operating Agreement, Plaintiff GLYNN and Defendant CHRISTY both contributed an assignment of all their right, title and interest in and to the Patents and the intellectual property at the time the LLC was formed. (See Section 6b to Operating Agreement). CHRISTY executed this Agreement and expressed no objection to GLYNN's agreed capital contribution.

**AIR BAK TECHNOLOGIES,  LLC Was Successful From Formation
Until the Misconduct by Defendant CHRISTY**

33.    These business successes continued.  Specifically, units were sold to approximately 30 college bookstores, Ritz Camera retail locations, Price-Smart and TJ Maxx companies.  GLYNN personally visited over 20 of the USA's  retailers in the fall of 2010 and sold  programs for 2011.  The LLC was successful and sold to Academy Sports and Outdoors in an  "end cap" position, BJs Wholesale, Dunhams Sports, Sports Authority and many others.

34.    During this same timeframe, the LLC enrolled 2 distributors including RMP Athletic Locker and AIR BAK Korea and set up collaboration with TOCAD America for sales of  photo bags  all  through  the  USA  retailers.  the  LLC  got  its  online  store  and  web  site  perfected  and started an effective internet marketing campaign.  The LLC's supply chain  with container ships and warehousing was established along with appropriate software to  account for the inventory and operations.  The LLC obtained placement on 12 separate TV segments, 5 magazines, and 24 newspapers.  The LLC was awarded Disney Preferred  Vendor and was featured in the ESPN Winter X games in January of 2011.  In this venue, The AIR BAK brand was featured on the podium for all 1st, 2nd and 3rd place winners.  This resulted in international TV coverage.

35.    The LLC was then enrolling distributors in Australia (Cache Group), Europe (Heelys) and Asia (Primer Group).  The LLC has also been approached by Force 21 to sell military and EMT bags to 140 countries in a Licensing arrangement and is in the process of negotiations  with the US Marine Corp and Chinese Military.  (This company development and success  during the year 2010 described in the preceding paragraphs of the Complaint had much to do  with the efforts, designs and intellectual property of Plaintiff NIEVES as set for the below).

**Summary of Investor Relations**

36.     As recent as February, 2011 GLYNN obtained a Letter of Intent from a potential investor which committed investments equaling $800,000 of equity financing as well as $1,000,000 in debt financing.  Under the terms of this transaction, Defendant CHRISTY and Plaintiff GLYNN agreed to split the remaining equity of the LLC on a 50%/50% basis.  The investor agreed to accept 30% equity in the LLC in exchange for his investment.  Defendant CHRISTY refused to accept this deal.  (A true and correct copy of the Letter of Intent is attached to this Complaint as **Exhibit 3** and incorporated by reference.)

37.     In early March, 2011 GLYNN obtained further financing for accounts receivables through a factoring agent, Coral Capital Solutions.  This entity provided working capital in the amount of $190,000.  In exchange, GLYNN provided a Second Trust Deed on his personal home in order to secure the capital advance and SAMPERE guaranteed $50,000.

38.     As recent as May 30, 2011 GLYNN obtained a Memorandum of Understanding from Anchor Finance Group, LLC for the purpose of obtaining equity and debt financing for the LLC. Under the terms of this proposed transaction, Anchor Finance Group, LLC agreed to arrange equity financing and included a pre-approved Letter of Credit in the principal amount of approximately $1,200,000.  In addition, Anchor Finance Group, LLC secured a stand-by Letter of Credit in the amount of $500,000.  This proposed transaction further included approximately $2,000,000 in equity financing.  (A true and correct copy of the Memorandum of Understanding is attached to this Complaint as **Exhibit 4** and hereby incorporated by reference.)

39.     As recent as June 1, 2011, Heelys Corporation had proposed a purchase of a majority

stake in the LLC. Heelys Corporation is a well-established distributor and manufacturer of children's shoes with roller-skate type bottoms. Heelys Corporation then proposed a valuation of approximately $6,000,000 for the LLC and the terms of a proposed purchase were still being discussed as of 2012 prior to State Supreme Court and Bankruptcy Court litigation described below. As discussed further below, Defendant CHRISTY prevented this deal from being completed and otherwise unlawfully interfering in this transaction in bad faith.

### Defendant CHRISTY's Misconduct In
### Relation to His Duties As A Member of The LLC

40.    On April 13, 2011 Defendant CHRISTY presented a financing deal to the other Members of the LLC. This deal proposed a transaction with a publicly-traded "shell" corporation by the name of RAMCO. Under the terms of this proposed transaction, Defendant CHRISTY was to receive 30% equity in RAMCO corporation. Surprisingly, under the proposal framed by CHRISTY, Plaintiff GLYNN was only to receive 5% equity in the new company. In addition, GLYNN would not have any management position nor be a member of the board of directors. To the contrary, Defendant CHRISTY negotiated a management position and seat at the board of directors for himself.

41.    GLYNN refused to agree to these terms as they were extremely unfavorable, ambiguous, and unknown. Despite this, Defendant CHRISTY told GLYNN that he was moving forward with the deal and that GLYNN could either accept the 5% and execute the transaction or he would receive nothing going forward.

42.   It was subsequently discovered by GLYNN and SAMPERE that the RAMCO deal was actually brought to CHRISTY by Defendant SPEYER, who was CHRISTY's right hand

man,  and, upon information and belief, a shareholder in the Corporation.

43.    During this period of time, Defendant CHRISTY, had campaigned against GLYNN with SAMPERE and informed SAMPERE that GLYNN was not performing satisfactorily.  As a result of his convincing, CHRISTY also convinced SAMPERE to sign a resolution dated  April 14, 2011 removing GLYNN as the Manager of the LLC.   (A true and correct copy of this purported resolution is attached to this Complaint as **Exhibit 5** and hereby incorporated by reference.)

44.    However, the subject resolution was invalid because a supermajority under the Operating  Agreement was 67%, however, between SAMPERE and CHRISTY, they only controlled 66.67% of the shares in the LLC. [In any event the resolution was rescinded by SAMPERE when he entered into a June 18, 2011 agreement with GLYNN and RAMCO where GLYNN and SAMPERE actually do constitute a Supermajority of the LLC's membership.

45.    GLYNN and CHRISTY seemed to have reconciled their differences in May 2011 and were conducting business affairs amicably. Heelys, the LLC's European Distributor was having great sell-throughs in Europe and was interested to talk to GLYNN and CHRISTY about a transaction.  GLYNN and CHRISTY flew out to Dallas on June 1, 2011 to meet with Heelys' CEO, CFO and CMO. Heelys was interested in buying 100% of the LLC and wanted the LLC to work with its investment bankers on structuring a deal.

46.    At a later date, (the Fall of 2011), SAMPERE was told by Heely's CFO that Heely's had offered $3 million for 100% of the LLC directly to CHRISTY. However, CHRISTY had unilaterally deemed that offer to be too low and never relayed SAMPERE or GLYNN.

47.    Also on April 13, 2011, a factoring entity known as Coral Capital found out that a lien

was put on all the assets of the LLC and froze the activity. The lien was a result of CHRISTY's secret Agreements made with RAMCO, including, a Loan Agreement and Promissory Notes in April 2011 upon which a default was eventually taken.

48.     On June 4, 2011, in his effort to pirate the LLC and freeze SAMPERE and GLYNN out, CHRISTY shut down the LLC's email accounts and then, only on June 8, 2011, delivered to GLYNN, the April 14, 2011 Resolution (**Exhibit 5**) purporting to remove GLYNN as the Manager. CHRISTY then made it clear by his other conduct in May and June 2011 that he was taking steps to pirate all of the LLC's assets and good will and that CHRISTY was intent on freezing out GLYNN and SAMPERE going forward.

49.     The day after GLYNN refused to sign off on the RAMCO deal, on April l4, 2011, Defendant CHRISTY executed a purported termination of GLYNN as Manager of the LLC. This purported resolution was invalid and fraudulent as it recited a supermajority decision (as required under the Operating Agreement) despite the fact that CHRISTY and SAMPERE only collectively owned 66% of the LLC.  Supermajority is defined as 67% or more.

50.     Subsequently, and during the month of April, Defendant CHRISTY instructed RAMCO to send approximately $260,000 to the LLC's factories in China.  At that time, GLYNN and SAMPERE did not authorize CHRISTY to incur this indebtedness on behalf of the LLC.  Based upon information and belief, CHRISTY converted to his own use, approximately $10,000 out of the total $260,000 that was unlawfully borrowed from RAMCO.  Defendant CHRISTY also then executed a Master Loan and Security Agreement, as well as a Promissory Note, on behalf of the LLC without authority.

51.     Plaintiff GLYNN has made repeated requests to see the Master Loan and Security Agreement, as well as the Promissory Note.  To date, Defendant CHRISTY has refused, and

continues to refuse to provide a copy of these documents.

52.    On June 1, 2011, Coral Capital (the factoring agency) notified GLYNN and CHRISTY that AIR BAK was in default under the factoring agreement because RAMCO placed U.C.C. liens on all receivables of the LLC, in conjunction with the loan that CHRISTY unlawfully procured.

53.    On June 2, 2011, Coral Capital served Plaintiff GLYNN with a formal notice of default and demanded that the U.C.C. liens be removed.  As stated previously, GLYNN personally guaranteed the factoring line of credit through a Second Trust Deed on his personal home.

54.    On June 3, 2011, Defendant CHRISTY served GLYNN with a purported termination of the Patent License Agreement.  This termination was invalid as it was a unilateral attempt to terminate the License in direct contravention of the terms of the Patent License Agreement.

55.    On this same day (June 3, 2011) Plaintiff GLYNN was denied access to the LLC bank accounts online banking system.  (Prior to this date, GLYNN was the signer on the account and handled all the banking transactions.)  GLYNN's email account was surreptitiously turned off on CHRISTY's instruction.  GLYNN further learned that Defendant CHRISTY told numerous distributors and customers that GLYNN was no longer affiliated with the  LLC.

56.    Moreover, also on June 3, 2011, Defendant CHRISTY emailed the principal of Anchor Finance, LLC and stated, "Nasim, Thank you for your interest in AIR BAK.  At this time AIR BAK technologies llc [sic] will be dissolved and patents have been removed.  At the  Request of New Partner and Legal Council-- Please discontinue all efforts on AIR BAK's behalf.  Please do NOT circulate any AIR BAK information to Anyone without my written  authorization."

57.    On June 7, 2011 GLYNN and SAMPERE learned that CHRISTY told Heely's representatives that the  Patents were no longer with the LLC and that GLYNN was no  longer

affiliated with the company.

58.    Based upon these developments, as well as being notified by Plaintiff NIEVES of other misconduct by CHRISTY (set forth below) GLYNN and SAMPERE then realized together that they had been deceived by CHRISTY and recognized that CHRISTY was lacking integrity and that fair dealing with CHRISTY going forward was impossible absent formal court proceedings.

59.    Based upon SAMPERE's and GLYNN's discovery of Defendant CHRISTY's self-dealing and violation of his fiduciary duties to the LLC, GLYNN spearheaded a litigation in New York Supreme Court, which caused CHRISTY to file a Bankruptcy Petition and ultimately resulted in the issuance of a Preliminary Injunction against CHRISTY by Chief Bankruptcy Judge Celia Morris on January 25, 2012 . (See **Procedural History In Court** below).

60.    Defendant CHRISTY's  actions have caused significant harm to Plaintiff GLYNN and to the LLC,  including:

•    Since the email was turned off, GLYNN was unable to invoice BJ's Wholesale for $150,000 that was going to be utilized towards the Coral Capital debt;

•    Defendant CHRISTY terminated the online store (store.AIR BAK.com) which  was generating approximately $4,000 per month in revenue;

•    Numerous orders have not been shipped due to the lack of email. This includes approximately $54,000 to Dunham Sports, Markwort Distribution, and various internet orders;

•    Defendant CHRISTY has interfered in the banking operations which has

prevented payment of the office rent, telephone, and payroll;

•       There is no visibility with regards to products incoming from the China

factories.  This is preventing the shipment of various orders including a $67,000

order schedule to  ship for Heelys in Europe and $82,000 for Cache Group in

Australia.

61.     The activities of Defendants caused (i) Plaintiffs GLYNN and SAMPERE to be damaged

in an amount to be proven at the time of trial, but in excess of $3,000,000,  representing lost

opportunities and lost profits; (ii) the LLC  to be damaged in an amount to be proven at the time

of trial, but in excess of $5,000,000,  representing lost opportunities and lost profits; and (iii)

threatens to irreparably damage Plaintiffs GLYNN and the LLC  by otherwise converting the

intellectual property and destroying the entire business operations and technology.


### Defendant CHRISTY's Concurrent Misconduct In Relation to Intellectual Property Developed and Transferred to AIR BAK By Plaintiff NIEVES

62.     Plaintiff NIEVES is a designer and marketer of backpack products and has been involved

in the industry for 20 years with extensive domestic and overseas experience in backpack design

and product development.

63.     On or about December 15, 2009, Plaintiff NIEVES was first introduced to the LLC by

Plaintiff SAMPERE because SAMPERE wanted NIEVES' professional opinion regarding the

LLC's backpack prototype/production which was then called a variety of names such as

"Comfort Back" "Wellness Pack", "Kids Fitness" under designs previously developed by

Plaintiff GLYNN and Defendant CHRISTY.

64.     On or about December 21, 2009, NIEVES, accompanied by his wife, met with SAMPERE and studied the then existent backpack prototype.

65.     NIEVES, while being impressed because the interior airbladder design helped reduce the backpack weight load by 50%, informed SAMPERE that the idea was good but that the product required a lot of reworking, retooling, marketing and redesigning to make it better. NIEVES felt the backpacks SAMPERE was showing him were not up to today's product design standards.

66.     SAMPERE had determined to become a member of the LLC, arranged a further meeting between SAMPERE, NIEVES and Defendant, CHRISTY, in Mt. Kisco, New York to discuss CHRISTY's marketing strategy and placement opportunities for the LLC's backpack business.

67.     CHRISTY informed SAMPERE and NIEVES at that meeting that CHRISTY was previously a building contractor whose business was affected by the world financial crisis, that he had patented the original air bladder system for backpacks [**US 20130075438 A1**]. CHRISTY further stated to NIEVES that CHRISTY had limited success with his backpack (but that there was current interest in selling into major department stores), that CHRISTY had some inventory of the product in his garage but was not able to liquidate it since the designs were out dated.

68.     At the meeting in Mt. Kisco, CHRISTY displayed to NIEVES the then operative designs for three (3) methods of inflating the patented air bladder system: *Method 1*, blowing through a mouthpiece tube apparatus; *Method 2*, placing the mouth on the bladder and blowing air directly into the bladder, similar to a beach ball; and *Method 3*, use of a tube with a blood pressure type pump apparatus.

69.     After the demonstration NIEVES told CHRISTY and SAMPERE that the product was a viable idea but it needed to be completely redesigned if they want to turn the corner into a successful backpack business. NIEVES opined that, as the product currently stood, it would not

work in the retail arena.

70.    NIEVES presented several ideas at the meeting in Mt. Kisco including:

     a.    blowing into the bladder using your mouth was not a sanitary enough for

        the consumer, especially with diseases like SARS;

     b.    the blood pressure tube pump was not viable;

     c.    blowing directly into the bladder made the product seem cheap

     d.    it was too complicated to introduce 3 different methods for a single

        backpack idea;

     e.    the product needed to be streamlined in order to work for the retail buyers

        and consumers;

     f.    The LLC needed to take the Apple approach to product launch and set out

        with one unique idea and one marketing message behind using the air

        cushion backpack; and

     g.    the back panel of the backpack prototype was too simple and did not

        convey anything special from a marketing standpoint.

71.    Defendant CHRISTY was both extremely interested in NIEVES' opinions because CHRISTY did not have any experience in this product marketplace.

72.    CHRISTY stated to SAMPERE that he wanted NIEVES "on board" to help CHRISTY build the business and that the LLC needed someone of NIEVES's level and skills.  CHRISTY stated to SAMPERE that having NIEVES on board with NIEVES' overseas connections the business could be brought to fruition.

73.    Later, after NIEVES explained that he was busy with other clients, SAMPERE stated to NIEVES that the LLC needed to look into it and talk to Plaintiff GLYNN to see if they could

even afford to bring NIEVES on as a contractor, with the LLC's limited budget.

74.    Subsequently, NIEVES was convinced to work for the LLC on a mixed fee plus a percentage of ownership/membership in the LLC.

75.    After the agreement between NIEVES and the LLC was consummated, throughout the period of January 2010 through June 2011, NIEVES fully redesigned the backpack including the system for inflation of the airbladder system.  In conjunction with these redesigns, GLYNN wanted to bring in creative talent and stated that the LLC needed a true professional in the specific backpack industry.

76.    At this time, GLYNN and SAMPERE recognized that CHRISTY was not qualified to fulfill the roll of creative design direction, engineering and production know how to the table. Accordingly GLYNN and SAMPERE insisted on NIEVES being hired to fulfill the role needed to bring the LLC's products to market.

77.    Upon the contract being formed with the LLC, NIEVES performed the following general activities for the LLC:

    a.    sample shopping at Paragon in New York City for new collection;

    b.    sample shopping Westchester Mall for new collection;

    c.    started new hangtag designs;

    d.    meetings with CHRISTY to review ideas and direction for the new Air Bak/Avia line;

    e.    meetings with CHRISTY to disclose 3 new style bag and adjustments of the air bladder to fit the new design;

    f.    finalized the new AIR BAK logo and sent to CHRISTY;

    g.    Sent new hangtag design to CHRISTY;

h.  Further development worked on AIR BAK/ Avia line;

i.  Sourcing producers for the air bladder component;

j.  Meetings with representative Steve Roemer to discuss design direction for the product line;

k.  Meeting with GLYNN and CHRISTY to discuss the particulars of ownership in AIR BAK;

l.  Coordinated with owner Ronald and Queeny of Manton Factory from China to meet and discuss the product new line,  reviewed the NIEVES designs and introduced CHRISTY to Manton Factory owners;

m.  Developed all the production specs and renderings needed to produce the collection,  notified CHRISTY of sending exact bladder design;

n.  Sent CHRISTY actual renderings of the new inside bladder design, sent China detailed specs of the new back panel/shoulder blade protector, emboss quilted lumbar support, direct access to pinhole open and extra cushion shoulder straps  that NIEVES designed, as follows:









o.   Coordinated trip to Manton Bag & Accessories Co. LTD, in China for NIEVES
and CHRISTY;

p.   Oversaw CHRISTY's March 2011 trip to Manton factory in China to see and
discuss newly designed back panel ready inspection;

q.   Worked with Kris Antsberger, Paralegal at American Sporting Goods Corp.
regarding all design and legal for Avia and Ryka by AIR BAK;

r.   Traveled to  Manton factory in China to meet with CHRISTY and factory
personnel;

s.   Worked in China in March 2011 and supplied, cad spec and detailed backpack

renderings including tie-dye print designs [CHRISTY currently uses in his FAKE

AIR BAK CORP.] designing and review the mechanics to make the product work

and injection for mold design for backpack exterior valve (designs as follows):



t.    April 2011 work including supplying to CHRISTY hangtags, bladders and back

panel samples of the backpack from my factory source for purposes of legal patent

work; meetings with GLYNN and CHRISTY to review product line, Modell's

Planogram display, featuring newly design Airbak line (as follows):



78.    On or about May 6, 2011, CHRISTY informed NIEVES that the LLC wanted to switch

factories after Manton had made all of NIEVES's prototype and samples as requested by

NIEVES.  [In fact, CHRISTY did not have the LLC's approval to switch factories and this was one of CHRISTY's hidden steps taken to pirate AIR BAK which was not discovered until much later by SAMPERE and GLYNN.

79.    In May 2011, further hidden self-dealing by CHRISTY was discovered by NIEVES. NIEVES found out that 2 months earlier, in March 2011, while visiting the Manton Factory, CHRISTY had stolen design patterns and product samples from the factory and had apparently pre-hired a factory employee, "Aris" in what was later discovered to be CHRISTY's plot to bring all product manufacturing to new facilities in Northern China which were solely under CHRISTY's control.

80.    The LLC Plaintiffs allege that the bags currently being placed in the market by the Corporation and being featured on the Corporation's websites, are all the products, inventions, designs, logos and newly restructured air bladder systems developed by NIEVES under the contract with AIR BAK for an equity share of the company.

81.    The LLC Plaintiffs further hereby allege that all of NIEVES' products, inventions, designs, logos and newly restructured air bladder systems were to be fully and permanently titled to the LLC as part of the contract between it and NIEVES.

82.    However, LLC Plaintiffs allege that CHRISTY filed a false and fraudulent Patent with the United States Patent and Trademark Office claiming the CHRISTY was the exclusive inventor of the new air bladder valve and fill designs and systems of the AIR BAK products, when NIEVES was the true inventor/designer, which Patent filings are found at Publication Number EP2441342 A1:

https://www.google.com/patents/EP2441342A1?cl=en&dq=Philip+Troy+Christy&hl=en&sa
=X&ei=VOteUoOgKtip4APP54H4BA&ved=0CE4Q6AEwAw



83.    The LLC Plaintiffs further allege that By June 2011, CHRISTY's misconduct in relation to the formal Members of the LLC, GLYNN and SAMPERE, as well as the prospective Member of the LLC, NIEVES, made it clear that Defendants CHRISTY and CHRISTY's FAKE AIR BAK company were simply going to pirate all assets of the LLC, including the pre-existing Patents, and were going to expropriate all developed and developing intellectual property, including the new physical air bladder inventions, brands, designs, trademarks, trade-dress, and intended patent modifications which Plaintiff NIEVES had singularly created and had intended to fully and permanently transfer ownership of in exchange for an equity/membership position in the LLC.

84.    CHRISTY then sought new investors in his Patents and in conjunction with SPEYER, convinced DOLAN, CELAJ, MARTONE, and GOLDFARB to invest and loan money in order to exploit CHRISTY's backpack related Patents without any knowledge of the foregoing.

85.    On December 10, 2011, the Corporation was incorporated.

86.    Since its inception, the Corporation has been jointly owned in various proportions by Phillip Troy Christy, Joe Speyer, James Dolan, Ben Celaj, Luigi Martone. At all times during its existence, Christy has held a 70% interest in the Corporation.

87.    At the time of the Corporation's inception, CHRISTY granted, through a document entitled "assignment and agreement," to the Corporation full use of his patent for an inflatable bladder system for use in back packs to aid in weight distribution described in United States Letters Patent No. 7,631,792, which issued on December 15, 2009, based on United States Patent

Application Serial No. 11/101,044, having a filing date of April 7, 2005, and executed on April

4, 2005 (hereinafter "Patent 792").

88.    Specifically, the "assignment and agreement" document provided that:

> For value received, I, Philip Troy Christy, of Hopewell Junction, in the County of Dutchess, and State of New York, hereby sell, assign and transfer to AIRBAK TECHNOLOGIES, CORPORATION, a corporation of the State of Delaware, having an office at 52 Martin Road, Hopewell Junction, New York, 12533, U.S.A., and its successors, assigns and legal representatives, the entire right, title and interest, for the United States of America, in and to certain inventions related to BACKPACK described in United States Letters Patent No. 7,631,792, which issued on December 15, 2009, based on United States Patent Application Serial No. 11/101,044, having a filing date of April 7, 2005, and executed by me on April 4, 2005, and all the rights and privileges in said application and under any and all Letters Patent that may be granted in the United States for said inventions; and I also concurrently hereby sell, assign and transfer to AIRBAK TECHNOLOGIES, CORPORATION the entire right, title and interest in and to said inventions for all countries foreign to the United States, including all rights of priority arising from the application aforesaid, and all the rights and privileges under any and all forms of protection, including Letters Patent, that may be granted in said countries foreign to the United States for said inventions.
>
> I authorize AIRBAK TECHNOLOGIES, CORPORATION to make application for such protection in its own name and maintain such protection in any and all countries foreign to the United States, and to invoke and claim for any application for patent or other form of protection for said inventions, without further authorization from me, any and all benefits, including the right of priority provided by any and all treaties, conventions, or agreements. I hereby consent that a copy of this assignment shall be deemed a full legal and formal equivalent of any document which may be required in any country in proof of the right of AIRBAK TECHNOLOGIES, CORPORATION to apply for patent or other form of protection for said inventions and to claim the aforesaid benefit of the right of priority. I request that any and all patents for said inventions be issued to AIRBAK TECHNOLOGIES, CORPORATION in the United States and in all countries foreign to the United States, or to such nominees as AIRBAK TECHNOLOGIES, CORPORATION may designate.

89.    At all times relevant to this complaint, the operating agreement of the Corporation has

given the power to its managers to "borrow money from any Person, including banks, other

lending institutions, the Members, or affiliates of the Members on such terms as the Members

deem appropriate, and in connection therewith, to hypothecate, encumber, pledge and grant

security interests in the [Corporation's] assets to secure repayment of the borrowed sums." *See* Exhibit 6, §8.2(b).

90.     Despite granting such a power to managers, the Corporation's operating agreement limited such powers by requiring majority approval in order "(vi) to invest in, establish, form or otherwise create or acquire any subsidiary; (vii) enter into a transaction constituting a Change of Control; (viii) enter into any transaction involving the sale, lease, exchange or other disposition of any business or material assets of the Company (whether effected by merger, sale of assets or otherwise or in a series of related transactions.); (ix) make any acquisition, other than acquisitions of assets in the ordinary course of business; (x) transfer or license any material company intellectual property other than in the ordinary course of business." *See* Exhibit 6, §8.3.

91.     Thereafter, on or about June 5, 2014, Airbac Holdings, LLC (hereinafter "the Holding Company") was formed consisting of six managing members: CHRISTY, SPEYER, GOLDFARB, DOLAN, CELAJ, MARTONE. At all times during its existence, CHRISTY has held a 51% interest in the Holding Company.

92.     Under the terms of the Holding Company's operating agreement, decisions of the Holding Company would be taken by a majority vote of the five member board of managers. In such a vote, each manager on the board was to be afforded a single vote. *See* Exhibit 7, §2.1.

93.     At its inception, the Holding Company was intended to hold the intellectual property related to the product, originally created by CHRISTY, under the name Airbac, which was derived from Patent 792 which had previously been licensed to the Corporation. *See* Exhibit 7, §1.3.

94.     Pursuant to the stated purpose of the Holding Company, on or about June 5, 2014 the Holding Company irrevocably licensed its interest in Patent 792 to the Corporation.

95.     Subsequently, on or about January 11, 2016, the board of managers entered into an agreement that "no shareholder may borrow or take any loan over $10,000 for [the Corporation] without informing other shareholders. All shareholders will be sent complete information about any said loans to [the Corporation]. The other shareholders have 72 hours after being informed by email to call a meeting to discuss their concerns about the loan…" This agreement was signed by CHRISTY as President of the Corporation. Exhibit D.

96.     Under controlling statutory and common law, each member and manager of both the Corporation and the Holding Company owed both entities, their fellow members and managers a fiduciary duty.

**CHRISTY Unilaterally Enters Into Financing Agreement With i3PL
Without Notice To The Corporation's Board Of Directors**

97.     On or about December 1, 2013, CHRISTY, acting unilaterally on behalf of the Corporation, entered into an agreement with i3PL, LLC for financing. Under the terms of the agreement, i3PL would extend a $360,000 line of credit to the Corporation. Upon completion of the agreement, the Corporation was advanced $180,000, with the option of monthly withdrawals against the credit line up to $50,000.

98.     At the time of the execution of the agreement, i3PL was a Limited Liability Company, organized under the laws of the state of Delaware.

99.     In exchange for the line of credit, the Corporation granted to i3PL a six percent rate of return on any loaned funds as well as a security interest in all of the Corporation's accounts, inventory, and intellectual property.

100.     In regards to i3PL's security interest in the Corporation's intellectual property, the

agreement stipulated that in the event of a default on the part of the Corporation that i3PL would be granted an "irrevocable, non-exclusive license (exercisable without payment of royalty or other compensation to [the Corporation]) to use, assign, license or, to the extent permitted by the relevant license, sublicense any of the Intellectual Property pertaining to the Airbac bladder system…"

101.    Under the terms of the agreement, the Corporation would become obligated to pay accrued and unpaid interest on the first of every month beginning in January 2014.

102.    In addition to the financing agreement, CHRISTY entered into an agreement on behalf of the Corporation for shipping and storage services to be provided by i3PL. Under this agreement, the Corporation ultimately incurred $80,000 of fees for the storage of the Corporation's inventory.

103.    Upon information and belief, during the course of the loan, CHRISTY drew $180,000 of the credit line for his own personal use, and for which no account was ever made for the Corporation.

104.    Thereafter, prior to August 2016, CHRISTY defaulted on the loan from i3PL as well as the agreement for shipping and storage. At this point, i3PL demanded payment in full of the $260,000 outstanding under the credit line and for services rendered for shipping and storage.

105.    In addition to the loan that CHRISTY incurred on behalf of the corporation, he also entered into an unofficial partnership with James Lin (hereinafter "Lin"), a representative of i3PL, to use Patent 792 for a derivative product.

106.    At that time, Lin and i3PL were in the business of shipping and storage and were in the process of developing a specialized shipping container for televisions. To this end, Lin worked with CHRISTY to develop a new patent that would be incorporated into a padded television box

meant for shipping purposes.

107.    Upon information and belief, CHRISTY then filed a provisional patent application on January 30, 2014 for a padded television box incorporating aspects of Patent 792. Since the completion of this design, Lin and i3PL have profited from the implementation of the design underlying said patent application.

108.    In developing the new patent for the padded television box, CHRISTY granted Lin the right to use Patent 792.

109.    On or about, September 9, 2014, i3PL initiated litigation against CHRISTY and the Corporation for the defaults on the loan agreement and the agreement for shipping and storage in the state of California under the docket number BC55831.

110.    After negotiation, the Corporation's board of managers entered into a stipulated judgment on or about October 15, 2015 for payment of $270,000 in settlement of all claims.

111.    Upon information and belief, neither CHRISTY nor SPEYER, who are in exclusive control of the Corporation, has taken any action to resolve this outstanding liability and the total balance of this judgment is due and owing.

112.    Additionally, upon information and belief i3PL is currently in possession of approximately $600,000 in Corporation inventory, which is being held as a result of the money owed pursuant to the stipulated judgment.


**CHRISTY Attempts To Convey All Intellectual Property From The
Holding Company And Corporation To A Third Party**

113.    On or about August 10, 2016, CHRISTY, without consultation with the managers of either the Holding Company or the Corporation, executed an asset purchase agreement on behalf

of the Corporation with Discount Coupons Corporation (hereinafter "DCOU"), a Florida-based corporation.

114.    In exchange for the sale of all of Corporation's interests and assets, DCOU pledged to convey 7,000,000 shares of common stock of DCOU, one share of Series B Preferred stock of DCOU, and one share of Series C Preferred stock to the Corporation. *See* Exhibit 8, §2.2.

115.    Included in the assets sold to DCOU in the asset purchase agreement was all of inventory held in storage by the Corporation and all sales accounts held by the Corporation. *See* Exhibit 8, §1.

116.    Additionally, as part of the asset purchase agreement, CHRISTY bound the Corporation to grant "an exclusive, license to use the Patent rights and under the Patent Rights to develop, make, have made, use, sell, offer to sell, lease, export and import licensed products [worldwide] and to develop and perform licensed processes [worldwide]" in regards to Patent 792.

117.    Pursuant to this grant, DCOU intended to form an entirely new subsidiary which would continue to exploit Patent 792 and would operate the business under the trade name Airbac which is associated with both the Corporation and the Holding Company.

118.    Upon execution of the asset purchase agreement, DCOU incurred expense on behalf of the Corporation by paying to have KRG Logistics (hereinafter "KRG") store the Corporation's remaining inventory at KRG's warehouse in California.

119.    Subsequent to DCOU's payment of storage fees for the Corporation's inventory, CHRISTY unilaterally declared DCOU to be in breach of the asset purchase agreement, which he claimed absolved himself and the Corporation of any ongoing duty to perform under said agreement.

120.    On or about, October 11, 2016, DCOU offered to nullify the asset purchase agreement on

the condition that the Corporation immediately pay a sum of $16,500 for the sum paid to KRG and for legal fees that had been incurred.

121.    Since the nullification of the asset purchase agreement, the inventory of the Corporation has remained at the California warehouse owned by KRG.  The estimated value of said inventory is approximately $150,000 to $200,000.

122.    At this point, in addition to allegedly owing DCOU $16,500, the Corporation has been billed directly by KRG to store its inventory with an outstanding bill of $3,000.

123.    KRG has communicated to the members of the Corporation that because of the outstanding $3,000 it will begin liquidating the Corporation's inventory for a fraction of its value in order to recoup its fees for storage.

124.    CHRISTY and SPEYER are aware of KRG's plan to liquidate the Corporation's inventory which will result in substantial damages but have not remedied the situation.

### CHRISTY'S Continued Attempts To Illegally License Holding Company And The Corporation's Intellectual Property

125.    Upon information and belief, since the inception of both the Corporation and the Holding Company, CHRISTY and SPEYER have continually attempted to convey and license interests in Patent 792 for their own benefit, to the exclusion of the Corporation and its other members.

126.    Specifically, sometime prior to January 1, 2014, CHRISTY entered into negotiations with a Chinese manufacturer, Wanxinda to produce and distribute inventory for the Corporation, after which Christy entered into a one year contract with Wanxinda on behalf of the Corporation.

127.    Under the contract, the Corporation was to grant to Wanxinda the right to use Patent 792 and sell it under their brand in the Chinese market. In return, Wanxinda would pay to $1 for

every bag that it sold and $1.10 for every bladder system sold based on Patent 792.

128.    CHRISTY executed this agreement on behalf of the Corporation, without informing the Corporation's board of managers and without authorization.

129.    Upon information and belief, CHRISTY has continued to pursue and enter into similar agreements in China without informing the Corporation's board of managers and without authorization.

130.    Since the execution of this agreement, multiple products resembling those based on Patent792 have appeared in the international market bearing similar names to those produced and marketed by the Corporation.


**CHRISTY And SPEYER Continue To Acquire Funds In The Name
Of The Corporation Without Making Any Accounting To The
Corporation And Attempt To License Its Intellectual Property**

131.    On or about October 7, 2015, CHRISTY proposed requiring board approval for any member of the Corporation to spend or obligate the Corporation to any amount above $10,000. As alleged above, an agreement to this effect was later executed.

132.    Then, on or about February 10, 2016 CHRISTY initiated a campaign on the website Kickfunder, where individuals may donate funds to a particular project with a promise that the project will return the individuals' donated funds along with a return determined by the terms of the campaign. For said campaign, investors on Kickfunder were entitled to 10% interest on their investment in the Corporation.

133.    Through this campaign, CHRISTY purportedly sought to raise funds additional development, production, and marketing of the Corporation's products. Towards these goals, CHRISTY was able to raise approximately $70,000 in the name of the Corporation.

134.    However, instead of investing the $70,000 in further expansion or production on behalf of the Corporation, CHRISTY used the money to pay off previously incurred bills and paid to himself and Speyer, back salary in the amount of $25,000.

135.    Upon information and belief, neither CHRISTY nor SPEYER, who are in exclusive control of the Corporation, has taken any action to resolve this outstanding loan of $70,000.

### CHRISTY And SPEYER Continue To Make Sales In The Name Of The Corporation Without Making Any Accounting To The Corporation

136.    Since the formation of the Corporation, both CHRISTY and SPEYER have acted in the name of the Corporation to take orders for bags derived from Patent 792.

137.    Between the time that DCOU incurred expense on behalf of the Corporation with KRG to store the Corporation's inventory and the present CHRISTY and SPEYER have continued to accept sales orders on behalf of the Corporation.

138.    These orders have continued to be accepted via various media, such as through the Corporation's website.

139.    Upon information and belief, at the present, CHRISTY and SPEYER have accepted payment on orders for the Corporation's products for approximately $12,000.

140.    Due to the dispute with KRG over the outstanding payment of $3,000 for storage and shipping of the Corporation's inventory, the Corporation currently does not have access to any inventory to satisfy any of the sales agreements entered into by CHRISTY and SPEYER.

141.    As of the filing of this complaint, neither CHRISTY nor SPEYER has made any accounting of the funds accepted on behalf of the Corporation to the Corporation or its other officers.

142.    Upon information and belief, the funds collected by SPEYER and CHRISTY have been used for their own personal benefit at the expense of the Corporation, to which the funds rightfully belong.

143.    Additionally, SPEYER has communicated to the plaintiffs that he and CHRISTY intend to close the Corporation and subsequently reach a licensing agreement with an individual by the name of John Binh for Patent 792.

**Procedural Background And Futility Of Demand On CHRISTY And SPEYER**

144.    As referenced previously, the plaintiffs allege the following causes of action both in their individual capacities as well as derivatively on behalf of both the Corporation and the Holding Company.

145.    Each and every preceding factual account and every following cause of action was perpetrated either in whole or in part by CHRISTY.

146.    As previously referenced, CHRISTY has at all times during the existence of the Corporation and the Holding Company held a majority interest and voting position in both companies. By virtue of CHRISTY's responsibility for and benefit from the complained of acts, and his total control over both the Corporation and the Holding Company, it would have been futile for the plaintiffs to demand that the Corporation or the Holding Company initiate litigation against CHRISTY. For purposes of final decision on behalf of these companies, CHRISTY was they and they were CHRISTY.

147.    Moreover, such futility is demonstrated by CHRISTY's repeated refusal to discuss actions of the business with the other members. Specifically, the plaintiffs issued a letter to CHRISTY and SPEYER on December 9, 2016 for both to cease and desist from the types of

conduct set forth in the preceding paragraphs. As of the filing of this complaint, the plaintiffs have received no response.

### Procedural History in Other Courts

148.   In August 2011, immediately after CHRISTY first attempted his pirating of the LLC, Plaintiff GLYNN brought a derivative lawsuit in the Supreme Court of the State of New York, Index No. 651693/2011.  Despite initially receiving a TRO, GLYNN's derivative action was stymied by CHRISTY filing a bankruptcy Petition on July 25, 2011 (Docket No. 11-31119 – Chap 13).

149.   However, eventually, upon hearing of GLYNN's motion for a preliminary injunction, Chief Bankruptcy Judge Celia Morris entered and ordered an injunction against CHRISTY on January 25, 2011.   A true copy of the so-ordered injunction is attached here as **Exhibit 6** and incorporated by reference.

150.   Judge Morris' Preliminary Injunction found as follows:

- The LLC [AIR BAK] remains a corporate body for purposes of litigation pursuant to Delaware law, despite being listed as inactive by the Delaware Secretary of State.  8 Del. Code Ann. § 278.

- The LLC has demonstrated that it may suffer irreparable harm, including but not limited to, loss of goodwill and loss of customers if there is confusion over who has control of the patent pursuant to the Licensing Agreement, and which company is the real one.

- The LLC has raised sufficiently serious questions going to the merits that make fair grounds for litigation and a balance of hardships decidedly tips in the LLC's favor.

- The irreparable harm is not of the type adequately ascertainable and able to be redressed by a remedy at law such as monetary damages.

- Plaintiff [CHRISTY] has the ability to put the LLC out of business well before trial on the merits can take place if the Court does not

issue an injunction.

- The LLC has demonstrated irreparable harm based on the following acts by Plaintiff: (1) signing for the LLC; (2) ***creating corporate entities with substantially similar names to*** the name of the LLC; and
(3) using the LLC's goodwill and customer base, making it unlikely that the LLC will recover any amount of damages sufficient to reinstate the supposedly defunct LLC.

151. Judge Morris' Preliminary Injunction would have compelled CHRISTY as follows:

**ORDERED**, that plaintiff and/or plaintiff's business entities bearing substantially similar names to the LLC, including but not limited to, Airbak Technologies Corp. and Airbak Technologies LLC, and any others that may come to be known, are hereby prohibited and enjoined from, any and all contact including marketing or communicating with existing and prospective customers, suppliers and distributors of the LLC.

**ORDERED**, that Plaintiff must provide, both to this Court and to the LLC, a list of his claimed patents and the names of any corporations which he has an interest in, ownership, membership, managerial, or otherwise, with in ten (10) days from the date of entry of this Order; and it is further

**ORDERED**, that this Court will retain jurisdiction to enforce the terms of this order.

152. However, immediately after Judge Morris ordered the injunction, on January 20, 2012, CHRISTY moved to withdraw his bankruptcy filing which was so-ordered on February 15, 2012.

153. Plaintiffs originally contemplated reactivating the Supreme Court case, and did in fact appear in May 2013, in that Court to procure the Court's declaration that there had been no dismissal of that action on the merits.

## COUNT I
### (LLC Plaintiffs v. CHRISTY, the Corporation, and the LLC derivatively)

### *Patent Infringement*

154.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

155.    Defendants, CHRISTY and the Corporation. Have engaged in Patent Infringement violating 35 U.S.C.S. §§ 1 *et seq*.

156.    The LLC is the licensee of the 792 Patent).  The day after said Patent was issued it was assigned irrevocably by CHRISTY to the LLC (**Exhibit 2**).

157.    As irrevocable licensee, the LLC was granted all legal, rights and interests in the subject Patent and the ability to further convey and contract rights in relation thereto.

158.    It is role as irrevocable licensee, the LLC contracted with Plaintiff NIEVES to fully redesign the backpack including the system for inflation of the airbladder system.

159.    As set forth above, CHRISTY and the Corporation. frustrated that contract and expropriated NIEVES' co-invented systems.

160.    As set forth above, CHRISTY and the Corporation are marketing back pack products currently which utilize and contain all of the products, co- invented systems, designs, logos and newly restructured air bladder systems developed by NIEVES under the contract with the LLC for an equity share of the company.

161.    Defendant CHRISTY violated 35 U.S.C.S. § 256 when he knowingly and falsely filed Patent Application **US20120085804 A1** on April 12, 2012 and Patent Application **US 20130075438 A1** on November 20, 2012 because both Applications intentionally failed to

identify Plaintiff NIEVES as the co-inventor of the redesigned air bladder apparatus and air filling system.

162.    Defendant, Corporation., has contributed to the violation of 35 U.S.C.S. § 256 by failing to prepare and present CHRISTY's filings so as to properly identify NIEVES as a co-inventor of the redesigned air bladder apparatus and air filling systems while it knowingly engages in making, using, selling, or offering to sell within the United States, or importing into the United States, back pack products that embody the patented co-invention of NIEVES as described herein.

163.    Upon information and belief, Defendants, CHRISTY and the Corporation., have induced infringement of the licensed 792 Patent by other venders and commercial associates of the Corporation and/or have committed acts of contributory infringement.

164.    Neither the LLC nor NIEVES have expressly or impliedly consented to the infringing conduct of CHRISTY and/or the Corporation in relation to the 792 Patent.

165.    CHRISTY and/or the Corporation will continue to infringe the 792 Patent and to violate 35 U.S.C.S. § 256 unless enjoined by this Court.   As a result of the Defendants' infringing conduct, Plaintiffs NIEVES and the LLC have suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.   NIEVES and the LLC are entitled to preliminary and permanent injunctive relief against such infringement, under 35 U.S.C. § 283.

166.    As a result of the infringement of the 792 Patent, the LLC and NIEVES have been damaged, will be further damaged, and is entitled to be compensated for such damages, pursuant to 35 U.S.C. § 284, in an amount to be determined at trial.

**COUNT II**
**(LLC Plaintiffs v. CHRISTY, the**
**Corporation, and the LLC**
**derivatively)**

*Common Law Trademark*
*Infringement*

167.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

168.    Defendants, CHRISTY and the Corporation have engaged in Trademark Infringement violating 15 U.S.C.S. §§ 1051 et seq.

169.    As set forth above, NIEVES redesigned a series of AIR BAK trademark logos and established a redesigned trade dress for the AIR BAK back pack in addition to its mechanical  air bladder filling systems which were co-invented mechanical inventions.  These trademark  logos and trade dress were designed for AIR BAK under contract with NIEVES and ownership of the logos was assigned from NIEVES to the LLC.

170.    CHRISTY and the Corporation. are marketing back pack products currently which utilize and contain all of the trademark logos and trade dress were designed for the LLC under contract with NIEVES by NIEVES.

171.    The trade dress of the LLC line of products acquired distinctiveness by virtue of NIEVES' new designed and retooling and through secondary meaning such that consumers are likely to associate the source of such products with the LLC.

172.    Due to the LLC's exclusive and widespread use of the AIR BAK trademark logos and trade dress in connection with the back packs, AIR BAK's trade dress in such product line has acquired substantial value and recognition in the United States. Such trade dress is well known to the consuming public and the trade as identifying and distinguishing the LLC as the  exclusive

and unique source of the products that are used in connection with such trade dress.

173.    CHRISTY and the Corporation manufactured, sold and is continuing to sell back packs using designs that are identical to or substantially similar to or otherwise the same as the NIEVES' trademark, trade dress, patterns and logo created under contract for the benefit of the LLC.

174.    CHRISTY and the Corporation are using the non- functional features of the trade dress of the LLC Plaintiffs' AIR BAK product line such that there is likelihood of confusion between the trade dress of the Corporation's back packs and the trade dress of AIR BAK/NIEVES back pack product line. In fact, it is CHRISTY's intention that consumer confusion be created between the two product lines.

175.    Since June 2011 LLC Plaintiffs have set forth in sufficient detail in writing to the Defendants the nature of the infringements with demands, *inter alia,* that the Defendants immediately cease and desist from selling the AIR BAK back packs. However, Defendants have manifested a clear refusal to stop such wrongful activity, have defended the attempts in two courts to obtain injunctions through gaming the court systems, and continue to willfully, with bad faith intent to profit, and without the consent of Plaintiffs, traffick in and use, in this judicial district and elsewhere, the LLC's trademarks, logos, trade dress, and product designs as redesigned by NIEVES in 2010 through 2011, in the Corporation. back packs in violation of U.S. Copyright and Trademark laws.

176.    As a direct result, the LLC has lost sales in its back pack line, and all other LLC Plaintiffs have been damaged.

177.    By reason of the foregoing, the Defendants have engaged, and is continuing to engage, in acts of trademark infringement in violation of the common law.

178.    Such conduct on the part of the defendant has caused and will continue to cause

irreparable injury to the LLC Plaintiffs, for which they have no adequate remedy at law.

179.    Such conduct on the part of defendant has caused and will continue to cause damages to LLC Plaintiffs in an amount to be determined at trial.

## COUNT III
### (LLC Plaintiffs v. CHRISTY, the Corporation, and the LLC derivatively)

#### *False Designation Of Origin And Unfair Competition (15 U.S.C. § 1125(A))*

180.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

181.    The Defendant' use of LLC Plaintiffs' trade dress constitutes the use of false or misleading designations of origin and/or false representations of fact in violation of 15 U.S.C. *§* 1125(a), in that such conduct is likely to cause consumers to be confused, mistaken or deceived into believing that the offending products originate with, or are sponsored by the LLC, and/or that CHRISTY and the Corporation. are authorized licensees, distributors or retailers of the AIR BAK product line.

182.    Such conduct on the part of the Defendants has caused and will continue to cause irreparable injury to the LLC Plaintiffs, for which they have no adequate remedy at law.

183.    Such conduct on the part of Defendants has caused and will continue to cause damages to LLC Plaintiffs in an amount to be determined at trial.

**COUNT IV**
**(LLC Plaintiffs v. CHRISTY,**
**the Corporation, and the LLC**
**derivatively)**

*Common Law Unfair*
*Competition*

184.   LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

185.   By reason of the foregoing, the Defendants have engaged, and are continuing to engage, in acts of unfair competition in violation of the common law.

186.   Such conduct on the part of defendant has caused and will continue to cause irreparable injury to LLC Plaintiffs, for which they have no adequate remedy at law.

187.   Such conduct on the part of Defendants has caused and will continue to cause damages to Plaintiffs in an amount to be determined at trial.

**COUNT V**
**(LLC Plaintiffs v. CHRISTY,**
**the Corporation, and the LLC**
**derivatively)**

*N.Y. General Business Law § 360-1*

188.   LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

189.   Defendant' activities have created and continue to create a likelihood of injury to the public image and reputation of the LLC, and to dilute the distinctive quality of its trade dress and all rights held there under, in violation of the General Business Law of the State of New York.

190.   By reason of the foregoing, the Defendants have violated and are continuing to violate Section 360-1 of the New York General Business Law.

191.    Such conduct on the part of the Defendants has caused and will continue to cause irreparable injury to the LLC,  for it  has no adequate remedy at law.

192.    Such conduct on the part of Defendants has caused and will continue to cause damages to Plaintiffs in an amount to be determined.


### COUNT VI
### (LLC Plaintiffs v. CHRISTY,
### the Corporation, and the LLC
### derivatively)

#### *N.Y. General Business Law § 349*

193.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

194.    The Defendants' activities constitute deceptive acts and practices in the conduct of their businesses, in violation of Section 349 of the General Business Law of the State of New York.

195.    Such conduct on the part of the Defendants has caused and will continue to cause irreparable injury to the LLC Plaintiffs, for which they have no adequate remedy at law.

196.    Such conduct on the part of defendant has caused and will continue to cause damages to LLC Plaintiffs in an amount to be determined at trial.


### COUNT VII
### (NIEVES v. CHRISTY, the
### Corporation, and the LLC
### derivatively)

#### *Copyright Infringement*

197.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

198.    Plaintiff NIEVES filed his Copyright Application Number VAu001051494 for written works created as of December 13, 2010 with the US Copyright office on December 13, 2010. A true and correct copy of that filing is attached here as **Exhibit 9**.

199.    The copyrighted works 17 U.S.C. § 101 *et seq.*

200.    The unauthorized copying and use of NIEVES' copyrighted works in conjunction with the promotion, sale and distribution by PHILLIP TROY CHRISTY and the Corporation. of the Defendants' counterfeit AIR BAK back packs infringes upon NIEVES' exclusive rights to reproduce those works under Section 106 of the Copyright Act.

201.    PHILLIP TROY CHRISTY and the Corporation  have the right  and ability to supervise, and have a direct financial interest in, the aforesaid infringing activities.

202.    Defendants PHILLIP TROY CHRISTY and the Corporation have  knowingly induced, caused, participated in, materially contributed to and derived economic  benefit from the infringement of Plaintiff's copyrights, and plaintiffs have been damaged and  continue to be damaged thereby.

203.    Defendants' aforesaid conduct has been and continues to be intentional, willful, and with full knowledge of LLC Plaintiffs' copyrights and the infringement thereof.

204.    Defendants' conduct, as set forth herein, is causing and, unless enjoined and restrained by this Court, will continue to cause NIEVES irreparable harm.

205.    Defendants' use of the LLC Plaintiff's work(s) constitutes infringement pursuant to 17 U.S.C. § 501.

206.    Such conduct on the part of Defendants has caused and will continue to cause irreparable injury to NIEVES, for which Plaintiff NIEVES has no adequate remedy at law.

207.    Such conduct on the part of Defendants has caused and will continue to cause damages to Plaintiff NIEVES in an amount to be determined at trial.

## COUNT VIII
### (NIEVES v. CHRISTY, the Corporation, and the LLC derivatively)

### *Common Law Copyright Infringement*

208.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

209.    By reason of the foregoing, the Defendants have engaged, and are continuing to engage, in acts of copyright infringement in violation of the common law.

210.    Defendants' aforesaid conduct has been and continues to be intentional, willful, and with full knowledge of LLC Plaintiff's copyrights and the infringement thereof.

211.    Defendants' conduct, as set forth herein, is causing and, unless enjoined and restrained by this Court, will continue to cause NIEVES irreparable harm.

212.    Such conduct on the part of Defendants has caused and will continue to cause irreparable injury to NIEVES, for which Plaintiff NIEVES has no adequate remedy at law.

213.    Such conduct on the part of Defendants has caused and will continue to cause damages to Plaintiff NIEVES in an amount to be determined at trial.

## COUNT IX
### (LLC Plaintiffs v. CHRISTY, the Corporation, and the LLC derivatively)

### *Fraudulent Conveyance By Defendants*

214.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

215.    Defendants CHRISTY and the Corporation engaged in a series of transactions and conveyances where they hypothecated copyrights, trademarks, trade dress, patent rights, intellectual property, assets and receivables of the Plaintiffs which had not been purchased by them for adequate consideration where every such conveyance and transfer was made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors of CHRISTY and the LLC.

216.    Pursuant to N.Y. Debtor and Creditor Law § 276 the aforesaid conveyances were fraudulent as to both present and future creditors.

217.    Pursuant to N.Y. Debtor and Creditor Law § 277 the aforesaid conveyances were fraudulent as to the LLC, SAMPERE, GLYNN and the LLC's present and future creditors.

218.    Defendants' conduct, as set forth herein, is causing and, unless enjoined and restrained by this Court, will continue to cause the LLC Plaintiffs irreparable harm.

219.    Such conduct on the part of Defendants has caused and will continue to cause irreparable injury to the LLC Plaintiffs, for which they have no adequate remedy at law.

220.    Such conduct on the part of Defendants has caused and will continue to cause damages to LLC Plaintiffs in an amount to be determined at trial.

## COUNT X

### (NIEVES v. CHRISTY, the Corporation,
### and the LLC Derivatively)

### *Breach of Fiduciary Duty*

221.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

222.    Pursuant to the Operating Agreement, the Patent License Agreement, statutes prescribing conduct in a Limited Liability Company and existing common law, Defendant CHRISTY had a duty to act in good faith and not to commit acts of fraud, bad faith or willful tortious misconduct, and CHRISTY at all times, and to the present times, owed a fiduciary duty to GLYNN, SAMPERE and the LLC. The Operating Agreement further provides that the "Managers shall discharge their managerial duties in good faith... and in a manner reasonably believed to be in the best interests of the Company." **Exhibit 1**, ¶ 11.2(a).

223.    CHRISTY's actions, among other things, in refusing to execute transactions that were favorable to the Company, unlawfully attempting to remove GLYNN as Manager; attempting to transfer the entire assets of the LLC including the primary Patents; closing the bank accounts; shutting down the email accounts; borrowing money without authority; converting $10,000 to his own use; defaming GLYNN to distributors and customers; unlawfully attempting to terminate the Patent License Agreement; and other conduct as more particularly described herein, was a breach of fiduciary duty by CHRISTY.

224.    CHRISTY as a Member and Manager of the LLC had no right to self-deal with the RAMCO transaction and obtain for himself equity in exchange for property that belonged to the LLC and GLYNN.

225.    CHRISTY as a Member and Manager of the LLC was and is a fiduciary for GLYNN and the LLC and is not entitled to obtain profits or loans from the business of the LLC without the consent of GLYNN and is otherwise not entitled to dispose of the Patent, execute any licenses, or otherwise transfer any rights to the Patents.

226.    Defendant CHRISTY's refusal to disclose the terms of the Master Loan and Security

Agreement with RAMCO, relating to the loan transaction, constitutes a breach of CHRISTY's duty of loyalty and disclosure to the LLC Plaintiffs.

227.   Defendant CHRISTY's   assignment of the LLC's interest in the Patent without disclosure, consent, or accounting to the LLC Plaintiffs constitutes a breach of CHRISTY's fiduciary  duty to not self-deal with the business, property and opportunities of the LLC.

228.   As a direct and proximate result of Defendant Phillip CHRISTY's  breach of his fiduciary duties to the LLC Plaintiffs, the LLC Plaintiffs have been damaged in an amount to be proven at the  time  of  trial,  but  in  excess  of  $1,000,000,  with  pre-judgment  interest,  as  well  as reimbursement  of the LLC Plaintiffs'  legal fees.

229.   LLC Plaintiffs are also entitled to a full accounting of the gains made by CHRISTY and any  loans executed by him from his breach of fiduciary duty and the imposition of a constructive trust on all proceeds obtained by CHRISTY from his self-dealings with the LLC, the Patents, and RAMCO.

230.   By reason of their secrecy and breach of fiduciary duty, the Defendants are threatening the LLC Plaintiffs with transferring the Patents subject to constructive trust, which transfer, if taking  place,  would  destroy  the  business  operations  and  constructive  trust  and  otherwise irreparably  injure  the  LLC  Plaintiffs.   Accordingly,  LLC  Plaintiffs  are  entitled  to  temporary, preliminary,  and  permanent  injunctive  relief,  prohibiting  CHRISTY  from  transferring  the Patents.

## COUNT XI

### (LLC Plaintiffs v. CHRISTY, the Corporation, and the LLC derivatively)

### *Misappropriation of AIR BAK's Business Opportunity*

231.    Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

232.    A member or manager of a limited liability company may not take for himself a business opportunity presented to the company or an opportunity which is available for the Company's sole asset, among other opportunities.  The member or manager has a duty to take advantage of any such opportunity, if at all, for the benefit of the company.

233.    Defendants' misappropriation  of the Patents of the LLC, and the negotiations with RAMCO after unlawfully attempting to terminate GLYNN and otherwise shut down the business operations of the LLC, and his failure to communicate to the LLC Plaintiffs the terms of any proposed transaction, constitutes an actionable misappropriation  of a business opportunity of the LLC.

234.    A member and manager of a limited liability company has a duty not to take for himself the profits of operating, selling, or liquidating the business of the company.  Any such profits belong to the company and all of its members.

235.    As a direct and proximate result of CHRISTY's unlawful  misappropriation  of the business opportunity belonging to the LLC, the LLC Plaintiffs have been  damaged in an amount to be proven at the time of trial, but in excess of $1,000,000, with pre-judgment interest, as well as reimbursement  of the LLC Plaintiffs'  legal fees.

236.    LLC Plaintiffs are also entitled to a full accounting of the gains made by CHRISTY and any loans executed by him from his misappropriation and the imposition of a constructive trust on all proceeds obtained by CHRISTY from his self-dealings with the LLC, the Patents, and RAMCO.

237.    By reason of their secrecy, the Defendants are threatening the LLC Plaintiffs with transferring the Patents subject to constructive trust, which transfer, if taking place, would destroy the business operations and constructive trust and otherwise irreparably injure the LLC Plaintiffs.  Accordingly, the LLC Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief, prohibiting CHRISTY from transferring the Patents.

## COUNT XII

### (LLC Plaintiffs v. CHRISTY, the Corporation, and the LLC derivatively)

#### Breach of Contract and Implied Covenant of Good Faith and Fair Dealing

238.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

239.    A limited liability company and its members must comply with the implied covenant, existing in every contract, of good faith and fair dealing with relation to the other parties to the contract, including Plaintiffs GLYNN, SAMPERE and NIEVES.

240.    On information and belief, CHRISTY's acts and omissions, as alleged above, were perpetrated in bad faith and wanton dishonesty, in a surreptitious and secretive manner, with the intent to wrest and appropriate from Plaintiffs, GLYNN and SAMPERE, their percentage of

ownership, rights and benefits to the Patents and profits of the LLC.

241.    On information and belief, CHRISTY's acts and omissions, as alleged above, were perpetrated in bad faith and wanton dishonesty, in a surreptitious and secretive manner, with the intent to wrest and appropriate from Plaintiff NIEVES his original product and patent designs and intellectual property for the benefit of the newly formed and illegitimate Delaware corporation, the Corporation, the identity of which was intentionally designed by CHRISTY to mirror the identity of the LLC so as to deceive the business associates and partners of the LLC.

242.    Moreover, Defendant CHRISTY's actions, as alleged above, constituted independent and separate breaches of the Limited Liability Company Agreement and the Patent License Agreement.

243.    CHRISTY's actions and omissions, as alleged above, constitute a breach of his contractual duty to act in good faith and deal fairly with the Plaintiffs, GLYNN and SAMPERE, his co-members of the LLC, with the LLC itself in its contractual dealings with Plaintiff NIEVES, as a rogue member of the LLC who stole and misappropriated the intellectual property of Plaintiff NIEVES which was intended to be delivered to the LLC in exchange for equity interest in the LLC.

244.    As a direct and proximate result of CHRISTY's breach, each of the LLC Plaintiffs have been damaged in an amount to be proven at the time of trial, but in excess of $3,000,000, with pre-judgment interest.

245.    Further, pursuant to the terms of the controlling LLC contracts, Plaintiffs GLYNN and SAMPERE are entitled to reimbursement of their legal fees.

246.    Plaintiffs, GLYNN and SAMPERE, are also entitled to a full accounting of the economic

activity, banking, monetary activity undertaken by CHRISTY under the guise of the LLC or the Corporation and Defendants CHRISTY and the Corporation must, in furtherance of said accounting to the Members of the LLC, provide expedited disclosure of all loans, leases, contracts, and related business conduct undertaken in furtherance of the design, production and sale of the backpack products as well as any incomes resulting therefrom.

247.    Further, L L C  Plaintiffs request that a constructive trust be imposed upon any loans executed by CHRISTY and/or the Corporation as well as upon all proceeds obtained by CHRISTY and/or the Corporation derived from CHRISTY's self-dealings with the LLC, the Patents, and RAMCO.

## COUNT XIII
### (LLC Plaintiffs v. CHRISTY, the Corporation, and the LLC derivatively)

### *Constructive Trust*

248.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

249.    CHRISTY at all relevant times was aware of the LLC Plaintiffs respective interests in the LLC, the Patents, and the revenues, relationships, and contracts with customers, distributors, and investors.

250.    Without justification, CHRISTY caused the LLC to enter into a transaction involving the sale of Plaintiffs' interests of the LLC and property. Moreover, CHRISTY without justification, interfered in the business operations of the LLC and the relationship, revenues,  and contracts with various customers, distributors, and investors, as alleged above.

251.    As a direct and proximate result of Defendant CHRISTY's conduct and interference, the Plaintiffs have been damaged in an amount to be proven at the time of trial, but in excess of $1,000,000, with pre-judgment interest, as well as reimbursement of the Plaintiffs' legal fees.

252.    Plaintiffs are also entitled to a full accounting of the gains made by CHRISTY and any loans executed by him from his interference and the imposition of a constructive trust on all proceeds obtained by CHRISTY from his self-dealings with the LLC, the Patents, and RAMCO.

### COUNT XIV (LLC Plaintiffs v. CHRISTY, the Corporation, and the LLC derivatively)

#### *Conversion*

253.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

254.    CHRISTY's acts and omissions, as alleged above, were intended to and, in fact, did appropriate to himself, without justification, the ownership, rights, benefits and interest in and to the LLC that Plaintiffs had in their membership interests, including a direct or indirect  interest or rights in the LLC's valuable Patents.

255.    Such defendants' acts and omissions were committed with wanton dishonesty and constitute conversion of the LLC Plaintiffs' interests in the LLC.

256.    As a direct and proximate result of Defendant Phillip CHRISTY's conduct, the LLC Plaintiffs have been damaged in an amount to be proven at the time of trial, but in excess of $1,000,000, with pre-judgment interest, as well as reimbursement of the LLC Plaintiffs' legal fees.

## COUNT XV

### (LLC Plaintiffs v. CHRISTY, the Corporation, and the LLC derivatively)

### *Unjust Enrichment*

257.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

258.    CHRISTY's acts resulted in his unjustified, unlawful receipt of money or property with an unknown value in excess of his 33% interest in the LLC, with a resulting unlawful decrease in the LLC interest of Plaintiffs GLYNN and SAMPERE.

259.    By reason of the unlawful activities of CHRISTY, he was unjustly enriched in an amount to be proven at the time of trial, but in excess of this court's jurisdictional limits.

260.    LLC Plaintiffs are entitled to recover the amounts by which CHRISTY was unlawfully and unjustly enriched by virtue of his wrongful conduct.

### COUNT XVI (LLC Plaintiffs v. CHRISTY, the Corporation, and the LLC derivatively)

### *Rescission And Declaratory Judgment*

261.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

262.    The activities of CHRISTY, as alleged above, entitle LLC Plaintiffs to a rescission of each of their agreements with RAMCO and the LLC relating to the sale of the LLC Plaintiffs' LLC interests to RAMCO.

263.    Also, the activities of CHRISTY, as alleged above, entitle each of the LLC Plaintiffs to a

declaratory judgment under CPLR 3017(b) and CPLR 3004 that:

    a)      the LLC Plaintiffs at all times, from inception on December 16, 2009 to the date of the final judgment herein, have retained their respective 33% interests in the LLC;

    b)      the transactions and agreement of sale of the LLC Plaintiffs' LLC interests to RAMCO are null and void, including:

        (i)      the Master Loan and Security Agreement, as well as Promissory Note; and

        (ii)      any purported sale or transfer of the Patents to RAMCO.

264.    Appropriate adjustments shall be made pursuant to CPLR 3004 for the moneys and other property received by RAMCO and payments received by CHRISTY taking into account the respective LLC interests of GLYNN (33%).

265.    Further or consequential relief is claimed by the Plaintiffs consisting of an accounting, imposition of a constructive trust, application of the doctrine prohibiting commingling of trust assets with CHRISTY's personal assets and impressing a trust upon all commingled funds and other assets; and a declaration that, by reason of CHRISTY's breach of fiduciary duty, CHRISTY has forfeited all of his membership interest in the LLC.

## COUNT XVII

### (LLC Plaintiffs v. CHRISTY, the Corporation, and the LLC derivatively)

### *Equitable Accounting*

266.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

267.    The activities of Defendant CHRISTY as alleged above entitle the LLC Plaintiffs to an equitable accounting by CHRISTY and LLC for all of the moneys and other property received by CHRISTY or any entities controlled by him and/or the LLC with respect to the transaction with RAMCO.

268.    There exists a fiduciary or trust; relationship respecting the Defendants' dealings with the Patents and Property. LLC Plaintiffs entrusted to the Defendants their interest in the LLC and the Patents, as to which each of the Defendants is bound to reveal its dealings.

## COUNT XVIII

**(LLC Plaintiffs v. CHRISTY, the Corporation, and
the LLC derivatively)**

*Derivative Action Asserting
LLC's Claims Against
CHRISTY*

269.    LLC Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

270.    CHRISTY, as Member and Manager of the LLC, had a fiduciary duty to the LLC. CHRISTY breached this duty. These activities deprived the LLC of its right to receive benefits from the sale and the benefits of the Patent, the trademark, trade dress and copyrights addressed herein.

271.    CHRISTY is liable under the doctrine of waste to the LLC.

272.    Demand that the LLC commence the litigation against CHRISTY was made and action taken on the demand in the absence of CHRISTY in that CHRISTY has voluntarily left the LLC and has otherwise been removed as an officer/member for willful misconduct after a vote constituting a supermajority of membership interests in the LLC.

273.    CHRISTY is liable to the LLC for repayment of such amount to the LLC, with interest and attorneys' fees.

274.    Defendant CHRISTY's conduct, as set forth herein, is causing and, unless enjoined and restrained by this Court, will continue to cause the LLC irreparable harm.

275.    Such conduct on the part of Defendant CHRISTY has caused and will continue to cause irreparable injury to the LLC, for which the LLC has no adequate remedy at law.

276.    Such conduct on the part of Defendant CHRISTY has caused and will continue to cause damages to the LLC in an amount to be determined at trial.


## COUNT XIX

### (Corporation Plaintiffs v. CHRISTY and SPEYER)

#### *Fraud*

277.    Corporation Plaintiffs repeat and reallege each and every fact set forth in the preceding paragraphs of the Complaint as though set forth fully herein.

278.    This action is brought by the Corporation plaintiffs both in their individual capacities and derivatively on behalf of the Corporation since each Corporation Plaintiff, with the exception of GOLDFARB, was a member of the Corporation at all times relevant to the allegations contained within this complaint.

279.    After the formation of the Corporation, CHRISTY AND SPEYER acted to defraud both debt and equity investors in the Corporation by seeking to drain the Corporation of value in favor of other ventures benefitting CHRISTY and SPEYER.

280.    Through various contracts and statements to investors in the Corporation, CHRISTY and SPEYER represented that Patent 792 would be exploited solely for the benefit of the

Corporation and its members.

281. At the time that CHRISTY and SPEYER made these representations they had the intention to further license Patent 792 for their own benefit and to the detriment of the Corporation and its stakeholders.

282. The Corporation Plaintiffs, both debt and equity investors, relied on these representations and the promise of exclusive right to profit from the exploitation of Patent 792 when deciding to expend personal funds to either loan money to the Corporation or take an equity interest in it.

283. Since that time, CHRISTY and SPEYER have licensed and attempted to license Patent 792 to third parties, including but not limited to i3PL, DCOU, and Wanxinda, to the exclusion of the Corporation.

284. Additionally, CHRISTY and SPEYER have continued to take orders for products in the name of the Corporation, but to date have not conveyed or accounted for any of the sales proceeds to the Corporation. And, upon information and belief, they have converted said funds for their own personal use.

285. As a direct consequence of diverting funds and opportunities, rightfully belonging to the Corporation, CHRISTY and SPEYER, caused damage to the Corporation and its members. Consequently, the debt-holder plaintiffs have been damaged by the Corporation's inability to pay loaned amounts according to the held promissory notes.

286. As a result, the Corporation Plaintiffs are entitled to monetary damages in compensation for their resulting damages, as well as preliminary and permanent injunctive relief, as the rightful possessors of the intellectual property related to Patent 792.

## COUNT XX:

### (Corporation Plaintiffs v. CHRISTY and SPEYER)

*Fraud in the Inducement in Relation to Allegations Currently Pending in Glynn, et al. v. Christy, et al., 14-CV-1924 in the Federal District Court for the Southern District of New York*

287.    Corporation Plaintiffs repeat and reallege each and every fact set forth in the preceding paragraphs of the Complaint as though set forth fully herein.

288.    The Corporation Plaintiffs further allege, in the alternative to their other allegations of fraud, that should other parties successfully challenge the validity of the licensing of Patent 792 to the Corporation and the conveyance of the same patent to the Holding Company in the currently pending action in Counts I to XVIII that CHRISTY's conveyance to the Corporation Plaintiffs constituted fraud in the inducement.

289.    While the plaintiffs in the presently pending action deny these allegations, should they be proven by the appropriate burden of proof in that trial, it would invalidate the plaintiffs' interest in Patent 792, and essentially their interests in the Corporation and the Holding Company.

290.    At the time that both the Corporation and the Holding Company were created, CHRISTY represented to each of the Corporation Plaintiffs that he was vested with full title in Patent 792 and was free to convey, transfer, or license it to them.

291.    Should the LLC Plaintiffs prevail in their claims contained in counts I to XVIII of this Complaint, then CHRISTY's representations to the Corporation Plaintiffs that he held full title to Patent 792, with all rights to conveyance and licensing, were false. Moreover, should the LLC Plaintiffs prevail, then CHRISTY also would have known that such representations were false.

292.    CHRISTY made the aforementioned representations with the knowledge and the intent to induce the Corporation plaintiffs to rely upon them so that they would invest in the Corporation and the Holding Company.

293.    The Corporation Plaintiffs then, in fact, did rely on the representations that Christy made and invested in the Corporation and the Holding Company. Should the LLC Plaintiffs prevail on their claims, then the Corporation Plaintiffs will have lost their investment and suffered damages as a result. These damages, if they occur, will be directly attributable to CHRISTY's representation and their reliance upon it.

## COUNT XXI:

### (Corporation Plaintiffs v. CHRISTY and SPEYER)

#### *Breach of Contract and Implied Covenant of Good Faith and Fair Dealing*

294.    Corporation Plaintiffs repeat and reallege each and every fact set forth in the preceding paragraphs of the Complaint as though set forth fully herein.

295.    Based on the foregoing allegations, the Corporation Plaintiffs further allege that CHRISTY and SPEYER breached multiple contracts governing their continuing legal obligations to the Corporation Plaintiffs as well as the Corporation and the Holding Company.

296.    As outlined more fully above, CHRISTY and SPEYER violated both the operating agreement for the Corporation and the Holding Company by entering into various agreements to take on debt and/or grant security interests in the intellectual property of both entities, including but not limited to, the asset purchase agreement with DCOU, the financing agreement with i3PL, and financing obtained through Kickfunder.

297.    These actions violated the operating agreements of the Corporation and the Holding

Company by circumventing the required notice and approval required by §8.3 of the Corporation's operating agreement and §2.1 of the Holding Company's. Each of the referenced actions was taken without consulting or even notifying the membership of the Corporation and the Holding Company.

298.  CHRISTY's unilateral agreement with DCOU and his financing through Kickfunder were additionally violative of the January 11, 2016 contract requiring that no loans in excess of $10,000 be taken in the name of the Corporation without notice to all other members.

299.  As a result of the aforementioned agreements, CHRISTY has jeopardized the plaintiffs' interests in the Corporation and the Holding Company and has cost all substantial losses in legal fees and incurred debts.


## COUNT XXII:

### (Corporation Plaintiffs v. CHRISTY and SPEYER)

### *Patent Infringement*

300.  Corporation Plaintiffs repeat and reallege each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at length.

301.  This claim is brought by the Corporation Plaintiffs both in their individual capacities and derivatively on behalf of the Corporation since each plaintiff, with the exception of GOLDFARB, was a member of the corporation at all times relevant to the allegations contained within this complaint.

302.  Defendants, CHRISTY and SPEYER have engaged in Patent Infringement violating 35 U.S.C.S. §§ 1 et seq.

303.  The corporation is the licensee of Patent 792, issued on December 15, 2009.  This

patent has been licensed to the Corporation at all times during the Corporation's existence. Title to this patent has been vested in the Holding Company since June 5, 2014.

304.   As irrevocable licensee, the Corporation was granted all legal, rights and interests in the subject patent and the ability to further convey and contract rights in relation thereto with the intent that it would exploit the patent for the benefit of itself and its members.

305.   As set forth above, Christy frustrated that contract by engaging in *ultra vires* activity and directly competing with the Corporation, by marketing back packs and other products currently which employ and contain all of the products, co- invented systems, designs, logos and newly restructured air bladder systems protected by Patent 792 which had previously been irrevocably licensed to the Corporation.

306.   By doing so, CHRISTY has made, used, offered to sell, and sold a patented invention, within the United during the term of Patent 792 without the permission of the Corporation which held an irrevocable license to said patent.

307.   In so doing, CHRISTY violated 35 U.S.C.S. § 271.

308.   Upon information and belief, CHRISTY and SPEYER have induced infringement of the licensed patent 792 by other vendors and commercial associates of his and/or has committed acts of contributory infringement.

309.   CHRISTY and SPEYER will continue to infringe the Patent 792 and to violate 35 U.S.C.S. § 271 unless enjoined by this Court.   As a result of the defendants' infringing conduct, the Corporation Plaintiffs have suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.   The Corporation Plaintiffs are entitled to preliminary and permanent injunctive relief against such infringement, under 35 U.S.C. § 283.

310.   As a result of the infringement of Patent 792, the Corporation Plaintiffs have been

damaged, will be further damaged, and are entitled to be compensated for such damages, pursuant to 35 U.S.C. § 284, in an amount to be determined at trial.

## COUNT XXIII:

### (Corporation Plaintiffs v. CHRISTY and SPEYER)

### *Common Law Trademark Infringement*

311.   Corporation Plaintiffs repeat and reallege each and every fact set forth in the preceding paragraphs of the Complaint as though set forth fully herein.

312.   This action is brought by the Corporation Plaintiffs both in their individual capacities and derivatively on behalf of the Corporation since each plaintiff, with the exception of GOLDFARB, was a member of the corporation at all times relevant to the allegations contained within this complaint.

313.   Upon information and belief, in connection with the acts set forth above, CHRISTY and SPEYER are marketing, or are aiding others to market back pack products which employ trademark logos and trade dress associated with the products sold by the Corporation.

314.   These trademarks and trade dress were previously employed by the Corporation in their products themselves as well as in advertising and other promotional material used in the marketing and sales of the Corporation's products.

315.   Through this business, the trademarks and trade dress associated with the Corporation's products have acquired distinctiveness such that the Corporation's products are known to the consuming public as identifying and distinguishing the Corporation as the exclusive and unique source of the products containing said trademarks and trade dress.

316.   Upon information and belief, CHRISTY and SPEYER have marketed and aided others in marketing back packs that contain identical or substantially similar elements to the Corporation's trademark, trade dress, patterns, and logo.

317.   Such actions create a likelihood of confusion between the products and marketing material of the Corporation for its back pack line and those produced by CHRISTY and SPEYER independent of the Corporation.

318.   As a direct result, the Corporation has lost sales in its back pack line, and all other Corporation Plaintiffs have been damaged.

319.   Such conduct on the part of the defendants has caused and will continue to cause irreparable injury to the Corporation and the other plaintiffs for which there is no adequate remedy at law.

## COUNT XXIV:

### (Corporation Plaintiffs v. CHRISTY and SPEYER)

### *Common Law Copyright Infringement*

320.   Corporation Plaintiffs repeat and reallege each and every fact set forth in the preceding paragraphs of the Complaint as though set forth fully herein.

321.   This action is brought by the Corporation Plaintiffs both in their individual capacities and derivatively on behalf of the Corporation since each plaintiff, with the exception of GOLDFARB, was a member of the corporation at all times relevant to the allegations contained within this complaint.

322.   Under the common law, the Corporation holds a valid copyright as to the branding, advertising, and other promotional materials in relation to its products.

323.   Based on the above allegations, CHRISTY and SPEYER have knowingly induced, caused, participated in, materially contributed to and derived economic benefit from the infringement of the Corporation's copyrights, and the Corporation Plaintiffs have been damaged and continue to be damaged thereby.

324.   Such conduct on the part of the defendants has caused and will cause irreparable damage to the Corporation Plaintiffs, for which the Corporation Plaintiffs have no adequate remedy at law.

325.   Such irreparable injury is in addition to monetary damages.


## COUNT XXV:

### (Corporation Plaintiffs v. CHRISTY and SPEYER)

***Breach of Fiduciary***
***Duty***

326.   Corporation Plaintiffs repeat and reallege each and every fact set forth in the preceding paragraphs of the Complaint as though set forth fully herein.

327.   This action is brought by the Corporation Plaintiffs both in their individual capacities and derivatively on behalf of the Corporation since each plaintiff, with the exception of GOLDFARB, was a member of the corporation at all times relevant to the allegations contained within this complaint.

328.   Pursuant to the Operating Agreement, the Patent License Agreement, statutes prescribing conduct in a corporation and existing common law, defendants SPEYER and CHISTY had a duty to act in good faith and not to commit acts of fraud, bad faith or willful tortious misconduct, and CHRISTY and SPEYER at all times, and to the present times, owed a fiduciary duty to the Corporation and its members.  The Operating Agreement for the Corporation further

stipulates that "no provision set forth in this Agreement shall negate the fiduciary obligation and duty owed by each Member to other Members." *See* Corporation Operating Agreement, §16.2.

329.   CHRISTY and SPEYER's actions of creating debt obligations for Corporation; entering into equity financing agreements, and sales agreements without proper approval from the Corporation, and by unfairly competing with the Corporation by, among other things, exploiting Patent 792 without the Corporation's approval and to its exclusion from any benefit, and other conduct as more particularly described herein, was a breach of fiduciary duty by CHRISTY and SPEYER.

330.   CHRISTY and SPEYER, as  members and managers of the Corporation had no right to self-deal by taking a loan from i3PL for the payment of personal salary and expenses, in exchange for an "irrevocable, non-exclusive license (exercisable without payment of royalty or other compensation to [the Corporation]) to use, assign, license or, to the extent permitted by the relevant license, sublicense any of the Intellectual Property pertaining to the [Patent 792]", which had already been irrevocably and exclusively licensed to the Corporation. CHRISTY and SPEYER further had no right to sell the Corporation's inventory without holding the proceeds from such sales for the benefit of the Corporation.

331.   CHRISTY and SPEYER, as members and managers of the Corporation, were and are fiduciaries of the Corporation and are not entitled to obtain profits or loans from the business of the Corporation without the consent of the members of the Corporation and are otherwise not entitled to dispose of the patent, execute any licenses, or otherwise transfer any rights to the patents.

332.   CHRISTY and SPEYER's unilateral execution of debt and equity financing agreements creating security interests in the assets of the Corporation's intellectual property, as well as

their execution of sales agreements and otherwise exploiting Patent 792 without consent of the members of the Corporation and not for its benefit, constitutes a breach of CHRISTY and SPEYER's duty of loyalty and disclosure to the Corporation Plaintiffs.

333.   CHRISTY and SPEYER's exploitation of Patent 792 solely for their benefit without disclosure, consent, or accounting to the Corporation Plaintiffs further constitutes a breach of their fiduciary duty to not self-deal with the business, property, and opportunities of the Corporation.

334.   As a direct and proximate result of CHRISTY and SPEYER's breach of their fiduciary duties to the Corporation Plaintiffs, the Corporation Plaintiffs have been damaged in an amount to be proven at the time of trial, and are entitled to pre-judgment interest, as well as reimbursement of the Corporation Plaintiffs' legal fees.

335.   The Corporation Plaintiffs are also entitled to a full accounting of the gains made by CHRISTY and SPEYER and any loans executed by them from their breach of fiduciary duty and the imposition of a constructive trust on all proceeds obtained by CHRISTY and SPEYER from their self-dealings.

336.   By reason of their secrecy and breach of fiduciary duty, CHRISTY and SPEYER further threaten the plaintiffs' business and threaten it with irreparable injury from their unfair competition and anti-competitive acts. Accordingly, Corporation Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief, prohibiting Christy from exploiting Patent 792  to the exclusion of the Corporation Plaintiffs and from entering into any further debt or equity financing obligations on behalf of the Corporation without its approval.

**COUNT XXVI:**

**(Corporation Plaintiffs v. CHRISTY and SPEYER)**

*Violation Of The Racketeer Influenced And Corrupt Organizations Act, 18 U.S.C. § 1962(c)*

337.   Corporation Plaintiffs repeat and reallege each of the preceding allegations of the Complaint and incorporate the same by reference as if more fully set forth here at length.

338.   This action is brought by the Corporation plaintiffs both in their individual capacities and derivatively on behalf of the Corporation since each plaintiff, with the exception of GOLDFARB, was a member of the corporation at all times relevant to the allegations contained within this complaint.

339.   Section 1962(c) of Title 18 of the United States Code states, *inter alia,* that "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity..."

340.   CHRISTY is a RICO "person" as defined in 18 U.S.C. § 1961(3).

341.   SPEYER is a RICO "person" as defined in 18 U.S.C. §1961(3)

342.   CHRISTY and SPEYER formed and operated as an association, in fact "enterprise," as defined in 18 U.S.C. § 1961(4) for the common purpose of conducting a pattern of criminal activity all for the purpose of fraudulently diverting profits, business opportunities, and good will from the Corporation and the Holding Company to themselves.

343.   The scheme which CHRISTY and SPEYER orchestrated was accomplished by misrepresentation and fraud to induce the Corporation's shareholders and lenders to provide capital, effort, and other assets to the Corporation based on false promises and representations, as

alleged above, in counts XIX and XX of the complaint.  CHRISTY and SPEYER then illegally diverted funds, intellectual property, Corporation assets, and other good will towards themselves in violation of the Federal RICO Statute (the "RICO Scheme").

344.   CHRISTY and SPEYER committed crimes, through the Corporation and Holding Company, independent of its other shareholders and other stakeholders, in pursuing the RICO Scheme, including mail and wire fraud, 18 U.S.C. §§ 1341 and 1343, both of which are predicate crimes of "racketeering activity" as defined by 18 U.S.C. § 1961(1).  Both CHRISTY and SPEYER repeatedly and routinely used the interstate mail and wire services to engage in fraud, causing injury to the Corporation Plaintiffs' business and property.

345.   On information and belief, further and more examples of predicate acts will be uncovered in discovery, but are not available to the Corporation Plaintiffs as this time, because defendants are in complete control of the computer servers and communications used to further the RICO Scheme.

346.   The defendants functioned as a continuing unit, within the combined structure of the Corporation and the Holding Company, each playing a different role within the enterprise, acting jointly, on a continuing basis, to bring about the object of their scheme, enriching themselves, at the Corporation Plaintiffs' expense. Further, the continuity of their operation may extend even further into the past should it be proven by the LLC Plaintiffs that CHRISTY had previously irrevocably licensed Patent 792 to the LLC, only to wrongfully revoke the license and subsequently convey said patent to the Corporation and the Holding Company without the Corporation Plaintiffs' knowledge of his wrongful acts.

347.   CHRISTY participated in and orchestrated the activity of the RICO Enterprise by, *inter alia*: (a)   inducing shareholder's and lenders to invest in the Corporation based on the

misrepresentation that they would benefit from the Corporation's exclusive right to exploit Patent 792; (b) taking control of all of the Corporation's computer infrastructure, bank accounts, and other instrumentalities of the Corporation to the exclusion of all other members; (c) entering into agreements for loans and other investments in return for various security interests in Patent 792 for the benefit of himself and SPEYER to the exclusion of the Corporation and Holding Company; (d) fraudulently entering into contracts with third parties in the name of the Corporation with no intention of performing and subsequently defaulting on said agreements, leaving the Corporation with unresolved liabilities.

348.    SPEYER participated in and orchestrated the activity of the RICO enterprise by, *inter alia,* marketing and selling products of the Corporation, without authorization of the Corporation and without sufficient inventory to fulfill any orders and subsequently retaining funds made from these sales.

349.    Under CHRISTY's control, the RICO defendants fraudulently funneled the existing business of the Corporation as well as all new business that would have gone to it, to themselves or other corporate entities directly benefitting themselves.

350.    CHRISTY and SPEYER operated and managed all aspects of the activity of the Corporation's affairs through a pattern of racketeering activity, as alleged above.

351.    On information and belief, the RICO Defendants were and are engaged in interstate or foreign commerce, or their activities did and do currently affect interstate or foreign commerce.

352.    Pursuant to 18 U.S. C.§ 1961(5), a "pattern of racketeering activity" "requires at least two acts of racketeering activity, one of which occurred after the effective date of [the RICO statute] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."  Defendants have engaged in multiple acts of

fraudulent racketeering activity during this time period.

353.    Defendants used the mail and wires, in interstate or foreign commerce, to send documents and communications.  On information and belief, Defendants used telephone and email communications extensively to defraud numerous potential businesses and their business partners by making false statements over the telephone, related to the above transactions at or about the time these transactions occurred.

354.    By its nature, the RICO Defendants' scheme was designed to extend indefinitely, with no terminating point and the RICO Defendants' conduct was a regular way the defendants did business.

355.    In each case, the perpetrators of the scheme were CHRISTY and SPEYER individually, and in their capacity to act on behalf of the Corporation.  The scheme was implemented through mail and wire fraud, as alleged above, all for the purpose of the RICO Defendants diverting business away from the Corporation and Holding Company for their own benefit and for no consideration.  The RICO Defendants scheme was implemented, furthered and facilitated by mail and wire fraud, as alleged above.

356.    Each RICO defendant is separate and distinct from the criminal enterprise through which they acted, because each was and is a separate and distinct legal person.  CHRISTY and SPEYER are separate and distinct from the Corporation, through which they perpetrated their scheme.

357.    The Corporation through which CHRISTY and SPEYER acted is separate and distinct from the predicate crimes committed through each of the criminal enterprises because this corporate RICO Defendants had or has, on information and belief, legitimate operations independent of the criminal conduct alleged above.

358.    CHRISTY and SPEYER acted with fraudulent and criminal scienter because each orchestrated, operated and managed the activity of the Corporation and each knew the conduct underlying this RICO claim was damaging investors in and lenders to the Corporation through breaches of contracts, representations made and/or fiduciary duties, as well as criminal statutes, including the mail and wire fraud statutes, and the RICO statute.

359.    The Corporation, as managed and controlled by CHRISTY and SPEYER was and is the proximate cause of injuries to the Corporation Plaintiffs' business and property for which recovery is sought in that the injuries alleged herein were and are the direct and foreseeable consequence of misconduct in which the RICO Defendants knowingly engaged.

360.    By reason of the foregoing, Corporation Plaintiffs demands judgment against the RICO Defendants on this RICO claim as follows:

(a)  Compensatory damages in an amount to be proven at trial;

(b)  Statutory treble damages pursuant to 18 U.S.C. § 1964(c);

(c)  Plaintiffs costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c);

(d)  Punitive damages in an amount equal to nine times compensatory damages; and

(e)  Such other and further relief as the Court may deem just and equitable.


## COUNT XXVII

### (Corporation Plaintiffs v. CHRISTY and SPEYER)

#### *Equitable Accounting*

361.    Corporation Plaintiffs repeat and reallege each of the preceding allegations of the Complaint and incorporate the same by reference as if more fully set forth here at length.

362.    The activities of CHRISTY and SPEYER as alleged above entitle the Corporation

Plaintiffs to an equitable accounting by CHRISTY, SPEYER, and the Corporation for all moneys and other property received by CHRISTY and SPEYER, or other entities controlled by them relating to the business of the Corporation, including but not limited to, any sales of inventory derived or related to Patent 792.

## COUNT XXVIII:

### (Corporation Plaintiffs v. CHRISTY and SPEYER)

### *Constructive Trust*

363.   Corporation Plaintiffs repeat and reallege each of the preceding allegations of the Complaint and incorporate the same by reference as if more fully set forth here at length.

364.   Upon information and belief, the Holding Company is in possession of Patent 792, which the defendants, CHRISTY and SPEYER, have been wrongfully exploiting, as detailed above.

365.   The Corporation Plaintiffs and the Corporation provided title to Patent 792 to the Holding Company with the intent that any exploitation thereof would benefit the Corporation and its members.

366.   As previously detailed, after transfer of title, the defendants, CHRISTY and SPEYER exploited Patent 7,631,792 for their own benefit, to the exclusion of the Corporation and its members.

367.   CHRISTY and SPEYER have continued to wrongfully use Patent 792 while title to it has been vested in the Holding Company. In this way, the Holding Company has aided CHRISTY and SPEYER in wrongfully failing to use the intellectual property in question for the benefit of the Corporation and its members.

368.    By virtue of their wrongful acts, the defendants should not in equity and good conscience have obtained nor continue to hold and enjoy said property and resulting revenue or proceeds.

369.    One or more of the defendants has been unjustly enriched.

370.    By virtue of their wrongful acts, the defendants hold title to the said property in constructive trust for the Corporation Plaintiffs.

## COUNT XIX:

### (Corporation Plaintiffs v. CHRISTY and SPEYER)

### *Declaratory Judgment*

371.    Corporation Plaintiffs repeat and reallege each and every fact set forth in the preceding paragraphs of the complaint as though each were fully set forth here at length.

372.    The activities of CHRISTY and SPEYER, as alleged above, entitle the Corporation Plaintiffs to exclusive control over the assets of the Holding Company, including but not limited to, 792.

373.    Said activities entitle the plaintiffs to declaratory relief pursuant to N.Y. CPLR 3017(b).

374.    Due to the fraudulent use of Patent 792 by CHRISTY and SPEYER while title to said patent was held by the Holding Company, the Corporation Plaintiffs are entitled to a declaration that title to Patent 792, is vested in them and that they are solely entitled to exploit said patent.

375.    Further and consequential relief is claimed by the Corporation Plaintiffs consisting of the imposition of a constructive trust over Patent 792, which is held by the Holding Company.

**WHEREFORE,** the LLC Plaintiffs demand judgment, on **COUNTS I** through **COUNT XVIII** of the Complaint against Defendants CHRISTY and the LLC as follows:

On **COUNT I**, upon final hearing or trial:

    a.  A judgment that the Defendants have infringed the 792 Patent;

    b.  A judgment and order permanently restraining and enjoining the Defendants, their directors, officers, employees, servants, agents, affiliates, subsidiaries, others controlled by them, and all persons in active concert or participation with any of them, from further infringing on the 792 Patents;

    c.  A judgment and order requiring the Defendants to pay damages to LLC Plaintiffs adequate to compensate them for the Defendants' wrongful infringing acts, in accordance with 35 U.S.C. § 284;

    d.  A judgment and order requiring the Defendants to pay increased damages up to three times, in view of their willful and deliberate infringement of the 792 Patents;

    e.  A finding in favor of LLC Plaintiffs that this is an exceptional case, under 35 U.S.C. § 285, and an award to LLC Plaintiffs of their costs, including reasonable attorney fees and other expenses incurred in connection with this action;

    f.  A judgment and order requiring the Defendants to pay to LLC Plaintiffs pre-judgment interest under 35 U.S.C. § 284, and post-judgment interest under 28 U.S.C. § 1961, on all damages awarded; and

2.      On **COUNT II - VI**, as follows:

    a.  A determination that Defendants willfully and deliberately violated 15 U.S.C. § 1114, that the LLC has been damaged by such violation, and that the Defendants are liable to the LLC for such violation;

b.  A determination that Defendants violated 15 U.S.C. §§ 1125(a), (c), and (d)(1)(A)- (B), that the LLC has been damaged by such violations, and that Defendants are liable to the LLC for such violations;

c.  A determination that the Defendants committed common law trademark infringement, that the LLC has been damaged by such infringement, and that Defendants are liable to the LLC for common law trademark infringement;

d.  A determination that this case is "exceptional" in the sense of 15 U.S.C. § 1117(a);

e.  Under all claims for relief, that an injunction be temporarily, preliminarily, and permanently issued enjoining Defendants and their officers, employees, agents, successors and assigns, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of such injunctions, from:

   i.  imitating, copying, or making any unauthorized use of the AIR BAK Marks, or marks likely to cause confusion with them, including but not limited to the Infringing Marks, the Infringing Domain Names, and the AIR BAK Marks;

   ii.  importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation of the AIR BAK Marks;

   iii.  using any simulation, reproduction, counterfeit, copy or colorable imitation of the AIR BAK Marks in connection with the promotion, advertisement, display, sale, offer for sale, manufacture, production, circulation or distribution of any product or service, including but not limited to the Infringing Marks and the

Infringing Domain Names;

    iv.  using any false designation of origin or false description (including, without limitation, any letters, symbols, or designs constituting the AIR BAK Marks) or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed or sold by Defendants is in any manner associated or connected with AIR BAK or the AIR BAK Marks, or is sold, manufactured, licensed, sponsored, approved or authorized by AIR BAK;

    v.  filing an application with the USPTO or any state or local government to register any of the Infringing Marks, or any other mark likely to cause confusion with the AIR BAK Marks;

    vi.  all of the above with the exception of nominative fair use of the AIR BAK Marks.

f.  An Order directing that Defendants deliver for destruction all products, promotional and advertising materials, labels, tags, signs, prints, packages, videos or other materials in their possession or under their control, bearing or using unauthorized versions of the AIR BAK Marks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof (including but not limited to the Infringing Marks and the Infringing Domain Names), and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118;

g.  An Order directing the transfer of the Infringing Domain Names to AIR BAK or its designee;

h.  An Order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any service or product

manufactured, sold or otherwise circulated or promoted by Defendants is authorized by the LLC or related in any way to the LLC's products and services;

i.  An Order directing the Defendants and their agents, employees, servants, attorneys, successors, and assigns, and all others in privity or acting in concert therewith, to file with this Court, and serve upon the LLC's counsel within thirty (30) days after entry of such judgment, a written report under oath, setting forth in detail the manner and form in which they have complied with such judgment;

j.  An Order permitting the LLC, and/or auditors of the LLC, to audit and inspect the books, records, and premises of the Defendants and related entities for a period of six (6) months after entry of final relief in this matter, to determine the scope of the Defendants' past use of the LLC's intellectual property, including all manufacturing, distribution, and sales of products and services bearing LLC's trademarks, as well as the Defendants' compliance with the orders of this Court;

k.  An award of the LLC's costs and disbursements incurred in this action, including the LLC's reasonable attorney's fees;

l.  An award of the LLC's damages trebled or, alternatively, an award of Defendants' wrongful profits trebled, whichever is greater, plus the LLC's costs and attorney's fees, pursuant to 15 U.S.C. § 1117;

m.  An award to the LLC of its costs incurred in this action, including an award of reasonable attorney fees under 17 U.S.C. § 1114;

n.  As award to the LLC of statutory damages under 15 U.S.C. § 1125(d);

o.  An award of the LLC's damages arising out of Defendants' acts;

p.  An Order requiring Defendants to file with the Court and provide to the LLC an accounting of all sales and profits realized by Defendants through the use of the AIR

BAK Marks and any confusingly similar marks or counterfeits, copies, reproductions
or colorable imitations thereof (including but not limited to the Infringing Marks and
the Infringing Domain Names);

q.  An award of interest, including pre-judgment interest on the foregoing sums; and

3.      On **COUNT VII – COUNT VIII**, as follows:

a.  declaring that Defendants' unauthorized copying of LLC Plaintiff's copyrighted
works onto defendants' computer file servers willfully infringes the LLC
Plaintiff's copyrights in violation of the Copyright Act;

b.  Ordering defendants to deliver up for destruction all infringing materials,
including all discs, drives or other storage media, that contain infringing copies
of LLC Plaintiffs' copyrighted works;

c.  awarding LLC Plaintiffs, at their election, either (i) actual damages and profits
derived by defendant as a result of their infringing activities, pursuant to 17
U.S.C. § 504(b), or (ii) statutory damages in the maximum amount of $150,000
with respect to each of LLC Plaintiffs' copyrighted works, pursuant to 17
U.S.C. § 504(c);

d.  enjoining defendants and their respective agents, employees, officers and
directors, attorneys, successors, licensees, and assigns, and all those
persons acting in concert and combination therewith, from further
infringement of L L C  Plaintiffs';

4.      On **COUNT IX – COUNT XVI**, in an amount to be proven at the time of trial, but in
excess of $5,000,000, with pre-judgment interest, as well as reimbursement of the LLC Plaintiffs'
legal fees.  LLC Plaintiffs are also entitled to a full accounting of the gains made by CHRISTY

and the Corporation. and any loans executed by him from his breach and the imposition of a constructive trust on all proceeds obtained by CHRISTY from his self-dealings with the LLC, the Patents, and RAMCO.

5.      On **COUNTS IX and XVI** , rescission of each of the agreements with RAMCO and the LLC relating to the sale of the LLC Plaintiffs' LLC interests to RAMCO. Also, the activities of CHRISTY, as alleged above., entitle each of the LLC Plaintiffs to a declaratory judgment under CPLR 3017(b) and CPLR 3004 that:

> a.   the LLC Plaintiffs at all times, from inception on December 16, 2009 to the date of the final judgment herein, have retained their respective 33% interests in the LLC;

> b.   the transactions and agreement of sale of the LLC Plaintiffs' LLC interests to RAMCO are null and void, including:

>> i.   the Master Loan and Security Agreement, as well as Promissory Note;

>> ii.   any purported sale or transfer of the Patents to RAMCO.

6.      On the **COUNT XVII**, for an equitable accounting; and

7.      On **COUNT XVIII**, for judgment against CHRISTY for waste and misconduct together with an Order removing CHRISTY from management together with an award of:

> a.   Attorneys' fees;

> b.   Pre-judgment and post-judgment interest;

> c.   Punitive damages;

> d.   Costs;

> e.   Temporary, Preliminary, and Permanent Injunctive Relief; and

> f.   Such other further relief which the Court deems just and equitable.

**WHEREFORE**, The Corporation Plaintiffs pray as follows:

A.    That the Court adjudge and decree that the Corporation Plaintiffs shall recover their damages and the costs of this action, in an amount to be proven at trial;

B.    That a preliminary and permanent injunction issue, removing CHRISTY and SPEYER from their managerial positions at the Corporation and the Holding Company or in the alternative prohibiting the defendants from taking any action purported to be on behalf of the Corporation or the Holding Company including but not limited to

    1.    entering into contracts on behalf of either entity,

    2.    selling, transferring, or in any manner disposing of any of the assets of either entity,

    3.    granting rights to any third parties to use or exploit United States Letters Patent No. 7,631,792, which issued on December 15, 2009, based on United States Patent Application Serial No. 11/101,044, having a filing date of April 7, 2005, and executed on April 4, 2005, or

    4.    accepting any loans, capital contributions, or investments on behalf of either entity.;

B.    That the judgment in favor of the Corporation Plaintiffs be trebled under the RICO statutes;

C.    That reasonable attorneys' fees be awarded to the Corporation Plaintiffs under the RICO statutes;

D.      That the Corporation Plaintiffs be awarded punitive damages against Defendants in an amount equal to nine times their compensatory losses;

E.      That the Corporation Plaintiffs be granted such other and further relief as this Court deems just and proper.

F.      That a constructive trust be imposed over Patent 792 and all proceeds and assets related thereto for the benefit of the Corporation or the Holding Company, as well as the Corporation Plaintiffs.

G.      That a declaratory judgment be entered deeming the Corporation Plaintiffs the rightful owners of Patent 792 which is held by the Holding Company.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues presented in this complaint.

Dated: March 16, 2017

By:      */s/ Paul W. Verner*

PAUL W. VERNER
VERNER SIMON
*Attorneys for the LLC Plaintiffs*
30 Wall Street, 8th Floor
New York, New York
10005 Tel: (212) 502-5500
Fax: (212) 502-5400
pwverner@vernerlaw.com

Dated: March 16, 2017      By:      */s/ Howard Shafer*
Howard Shafer
Shafer Glazer, LLP
*Attorneys for the Corporation Plaintiffs*
125 Maiden Lane, Suite 16-A
New York, NY 10038-4912
P: 212-267-0011
F: 646-435-9434
hshafer@shaferglazer.com